# 12-1939

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

PAUL SALEH,

Plaintiff - Appellee,

v.

QDEROPATEO LLC , QDERO LIMITED HONG KONG, QDERO LIMITED

(BVI)

Defendants,

ALBERT FRANCESCO, CHRISTOPHER BUFFALINO, ANDREW M. GAINES

II,

Defendants - Appellants.

On Appeal from the United States District Court
For the Southern District of New York

Brief of Appellants Albert Francesco, Chritopher Buffalino and Andrew M. Gaines
II

c/o 97 Village Green Way
Hazlet, N.J. 07730
917-922-3521

TABLE OF CONTENTS

Page

Table of Contents

Table of Authorities………….…..……………………………..……………… 1

Statutes and Rules…………………………………………………….. 1

Statement of Subject Matter and Appellate Jurisdiction..……………………... 2

Statement of the Issues Presented for Review…………………………….. 2

Statement of the Case……………………………………………… 2

Statement of Facts………………………………………………… 3

Summary of the Argument………………………………………… 8

Argument……………………………………………………..…… 8

Conclusion………………………………………………….......... 14

Certificate of Compliance……………………………………….. 16

Certificate of Service……………………………………………….. 17

# TABLE OF AUTHORITIES

**Page(s)**

*Cody v. Mello*, 59 F.3d at 16…………………………………………………… 10

*Goldstein v. Gordon*, 2002 WL 324289 \*5 (N.D. Tex. 2002)………………………… 13

*McNulty,* 137 F.3d at 740……………………………………………………… 12

*Powerserve Int'l, Inc. v. Lavi,* <u>239 F.3d 508</u>, 514 (2d Cir.2001)…………………… 10, 12

*U.S. v. One Parcel of Real Prop.*, 763 F.2d 181, 183 (5th Cir. 1985)……………… 13

## STATUTES

28 U.S.C. Section 1291(a)(1)………………………………………………….. 1

## RULES

F.R.A.P Rule 4………………………………………………………………… 1

Fed. R. Civ. P. Rule 55(c)…………………………………………………… 2, 6

Fed. R. Civ. P. Rule 60(b)…………………………………………………... 2, 6

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. Section 1291(a) (1) in that this is an appeal from a Default Judgment entered by the United States District Court in the Southern District of New York.

The District Court affirmed the order from case number 11-0438 on March 30, 2012 (See Motion and Order dated March 30, 2012). Defendants - appellants Francesco, Buffalino and Gaines timely filed their Notice of Appeal on April 30, 2012. See Fed. R. App. P. 4.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Defendants-Appellants bring this case before the United States Court of Appeals for the Second Circuit in order to have their case remanded to the District Court for the case to be heard on its merits. This case relates to the prior District Court case in the Southern District of New York, Docket No: 11-0438, in which the appellee was awarded a Default Judgment. Appellants have not willfully ignored the Court and seek to have their case be tried on its merits based upon the facts that there is no original document and appellants did not sign the personal guarantee. These issues are reviewable pursuant to section 28 USC Section 1291 and Rules 55(c) and 60(b) Fed. R.Civ. P.

## STATEMENT OF THE CASE

This case has been brought before the United States Court of Appeals for the Second Circuit by the Appellants, in order to have the Default Judgment rendered against them

2

overturned, and remanded back to the United States District Court for the Southern District of New York. Appellee brought a case in January 2011 (case no. 11-0438) against the Appellants and other companies, in order to assert repayment of a loan he made to a corporation, and assert a personal guarantee against the Appellants. Appellee did not send the money to the appellants as instructed, instead sending the money overseas (Exhibit C). The District Court granted the appellee the right to serve the default judgment on the appellants in July 2011 (SDNY, ECF # 22), and confirmed the default judgment in November 2011 (see Appendix, "Judgment"). After several attempts by the appellants to have the judgment reviewed and the case heard on its merits, the District Court, in its Motion and Order on March 30, 2011 (See Appendix, "Order Being Appealed"), affirmed the Default Judgment. Appellants state that they have not willfully ignored the Court, and seek to have their case heard based on the merits of the case, therefore filing this appeal before the Court. The argument below will assert the defenses of the appellants.

## STATEMENT OF FACTS

1.        Qderopateo is a business that possessed cell phone technology. The three owners of Qderopateo are three entities: Qdero Ltd., Pateo LLC, and CWG Novus. The entity of Pateo consists of the three named appellants. Qdero Ltd. consists of Steve Chao, Henry Yau and Stanley Tong. CWG Novus is a fund that invested in Qderopateo.

2.        Qderopateo and other related entities were in the process of selling their technology to Vodafone PLC.

3.     Appellants Gaines and Buffalino, Frank Pipolo of CWG Novus and the appellee went to China in order to promote the business of Qderopateo. The appellee represented himself as an advisory member of Qderopateo.

4.     Thereafter, the appellee agreed to provide funding to Qderopateo. The note was signed by appellant Gaines on behalf of Qderopateo. None of the appellants ever personally guaranteed the note. The signatures contained on the personal guarantee attached to the note submitted to the Court by the appellee are not the signatures of any of the appellants.

5.     The appellee wired the money directly to Steve Chao. That money never passed through Qderopateo or the Defendants in any form, despite the request from appellant Francesco to wire the money to the corporate account in New York.

6.     The appellee received a call from a representative of Vodafone while they were performing their due diligence. Vodafone wanted verification that the appellee in fact loaned money to Qderopateo. When the appellee confirmed it, the appellee was asked that if Vodafone acquired intellectual property from the appellants and their business interests, would the appellee exchange the amount of the loan for equity in the new business. The appellee responded in the affirmative.

7.     It was in the appellee best personal interests to help orchestrate the transaction so that Qderopateo was acquired by Vodafone and he acquired equity in the new entity in exchange for his loan.

8.     After breaching his fiduciary duty to Qderopateo by placing his personal interests above the business itself, the appellee started an action against Qderopateo.

9.      The appellee Buffalino and Gaines were served sometime in February 2011 and advised Mr. Francesco of the complaint against Qderopateo.  Appellants sought an attorney but could not afford the substantial retainer.  In March 2011 (2 months before appellant Francesco was served), the appellee's attorney sent e-mails to all of the defendants seeking an answer.

10.      The e-mails were premature. Appellants Buffalino and Gaines were waiting for appellant Francesco to be served so that they could submit one answer.  In good faith, appellant Francesco sent on behalf of all defendants, a copy of a proposed answer in an Affirmation in Opposition to Motion (Exhibit A, ECF #26) to appellee's attorney before being served with an Affidavit of Service by the appellee .

11.      Thereafter, the appellee prepared the First Amended Complaint (SDNY, ECF # 5), which lists the three individuals as defendants. Qderopateo was no longer listed as a defendant. There has been no explanation on the part of the appellee was to why Companies were not litigated against.  The appellants believe that it has something to do with the suspicious facts surrounding this case from the outset.

12.      Appellant Francesco received a phone call from appellee's attorney advising that they were having trouble locating him to be served.  Appellant was forthright about his location and agreed to meet with a representative of the service company to accept service on May 18, 2011.

13.      The appellee's attorney did not ask for an answer after the amended complaint was served. Because appellants are not attorneys and had served Mr. Schmidt an answer to the first complaint, they were confused about the next step because the first scheduled

conference on April 8, 2011 was vacated. Based upon the first answer sent to him, appellee's counsel was well aware of appellant's position and defenses. In addition, appellants believed that they were awaiting notice for a new pre-trial conference date as the Appellee maintained active discussions with the Appellants with regards to the case.

14.     Appellee's counsel moved for a default judgment, which Appellants did not receive, through the U.S. Postal service, a consistent complaint that the appellants have had throughout the duration of the case.  Appellants asked an attorney unrelated to this case to review the docket by accessing the Pacer system in late July 2011, and were told that a default judgment was entered.  Appellant Francesco wrote to the court asking for an extension of time to serve an answer to the amended complaint, without receiving an answer from the District Court.  Appellants also included a proposed answer to the amended complaint that contained a counterclaim. Appellee's attorney was aware of appellants request to the Court because he was copied on the letter.

15.     As a very important part of this case, appellants were not aware that they had to explain to the court in detail at that time why the appellants' defenses had merit. Appellants thought that they would have the opportunity to prove the facts of the case to the Court during the proceedings, and therefore answered the complaint as to the proposed answers subject to preparing for the case through discovery and fact finding.

16.     Also, appellants did not know that appellants needed to sign the answer to the amended complaint at that point. Appellants believed that after the Court had given permission to sign the Answer, from the Court, that it would be entered into the Docket.

17.     The answer to the amended complaint contained a counterclaim for the breach of

a fiduciary duty on the part of the appellee.  Appellee was an advisory member of the entity

Qderopateo and he breached that duty by wiring the money directly to Steve Chao, without

first sending the money to the United States Corporate account of Qderopateo (Exhibit B) as

being instructed by appellant Francesco.

18.     On November 28, 2011, the Appellants filed a Notice of Motion for

Reconsideration; to Vacate the Default Judgment; and to stay the Execution of  Judgment"

(Exhibit D) in which the Appellants sought to have the Default Judgment reversed in order to

have the case tried on its merits.

19.     Appellants had learned during November 2011 that the appellee, who is the CEO

of Menza Partners, a private equity group at the website www.menzapartners.com , (Exhibit

C) posted that Menza Partners currently maintains and investment in Qderopateo. The

website was temporarily taken down in December 2011 due to the filing of our Motion to

Reconsider ( id. at 18).  A loan to a company is not an equity investment.  At no time has the

appellee made an additional investment in Qderopateo.  It has been the appellee's intention to

obtain an equity position in the business, despite disguising his contribution as a loan. His

website is an admission.

20.     In March 2012 the District Court ruled, despite our arguments, that the Default

Judgment should stand as ruled in November 2011 (see Motion and Order in Appendix)

## SUMMARY OF THE ARGUMENT

The appellants appeal this case in order to have the case remanded back to the District Court to be heard on its merits, in accordance with Fed. R. Civ. P Rule 55 (c) and Rule 60(b). Appellants have the right to a fair trial to prove that they have not signed the document. Appellants have not, and would not, willfully ignore the Court. Appellants seek to prove that they have not signed the personal guaranty, and are certain that no original document exists.

## ARGUMENT

21.        The Appellants appeal to United States Court of Appeals for the Second Circuit to have the ruling for the default judgment overruled and remanded to the District Court as per Rules 55(c)[1] and 60(b)[2] Fed. R. Civ. P. for further proceedings for the reasons below.

22.        At no time have the appellants willfully disregarded the proceedings of the Court. As defendants for the first time in a case such as this, appellants were unaware of certain Court proceedings and timing of events.  Mr. Saleh had attorneys calling the appellants from both Clark Hill and Kennedy Lillis Schmidt & English, serving appellants with a complaint and then an amended complaint.  We were unsure as to which complaint to answer and

---

[1] Rule 55(c), Fed. R. Civ. P. The Court addressed the three good cause factors, to wit, the willfulness of the default, the prejudice to appellee if the default were vacated, and the existence of any meritorious defenses to appellee's claim.

[2] Rule 60(b) provides that "the court may relieve a party . . . from a final judgment, order, or proceeding for the reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence . . . ; (3) fraud . . . ; (4) the judgment is void . . . ; (5) the judgment has been satisfied . . . ; or (6) any other reason that justifies relief." Rule 60(b), Fed. R. Civ. P.

verbally sought clarification from Mr. Schmidt and Mr. Ziff, to no avail. Location played a part in this confusion since one appellant lives in New Jersey and two others live in North Carolina. Although the Appellee certified that copies of the complaint and other documents were sent by mail, Mr. Francesco did not receive service of the Amended Complaint until May 18, 2011, until physically being served. Mistakenly, Mr. Francesco believed that he had already been served from the first complaint and had answered the appellee months earlier in March 2011(Exhibit A).

23.        Although the Court docket suggests that the Default Judgment was mailed to the three defendants on July 21, 2011, none of the defendants received the documentation, as the Court had three different addresses for each of the three defendants, with appellant Francesco living in New Jersey and appellants Gaines and Buffalino residing in North Carolina. Mr. Francesco wrote a letter to the Court, filed on July 29, 2011 to clear up confusion (SDNY, ECF # 23) regarding the timing of the case and asking for a time certain to respond and was told by the Pro Se office that a default judgment had been granted. Mr. Francesco and his co-appellants Buffalino and Gaines submitted a document that would be their proposed answer, were they be allowed to submit an answer to the Court. Unsure about Court protocol, the defendants were attempting to respectfully ask the Court to hear their argument. The Court did not respond to the letter. However, appellee's counsel responded to this proposed answer, submitting a response and several exhibits to refute the proposed answer on September 29, 2011. On November 14, 2011, the District Court affirmed the Default judgment. Subsequently, the appellants submitted the "Motion to for Reconsideration to Vacate the Default Judgment and to stay the Execution of Judgment" on November 28, 2011, (entered into Court Docket on December 5, 2012, Exhibit D) so that the case could be heard before

the District Court. At this point, since mail delivery was been a problem throughout the case, (appellants have consistently complained to the pro se office regarding the delivery of case information), appellants were unaware of Court correspondence unless the appellee's counsel sent documentation to us via email, which did not happen on a consistent basis.

24.　　In addition, appellants did not receive correspondence in the beginning of this appeal case, especially with respect to the additional Notice of Appeal signature requests from appellants Buffalino and Gaines. A discussion with the most recent case manager, Deborah Holmes, has yielded better results since our latest complaint in August 2012 it appears as though the responses from the Court are now being delivered. Pro se appellants are at a disadvantage due to the lack of ability to receive ECF notices and in no way should the lack of response be considered willful or disrespectful of the Court. As a matter of procedure, it is difficult to keep up with the proceedings via the U.S. Post Office if mail is lost, delivered to the wrong address, etc.

25.　　The case should be heard on its merits. The Court noted that in the first submission dated July 29, 2011 that the appellants submitted the response that they "did not sign personal guarantee." (See Def. Affirmation Supp. Mot. for Reconsideration, Exhibit D, Answer, "Affirmative Defenses" ¶ 1.) The District Court "laid emphasis on the fact that this assertion was made in an unsworn portion of defendants' papers" in the proposed answer. However, the appellants believed that when they submitted the Proposed Answer to the Court they were (i) asking for permission to submit a response and (ii) that they were submitting a sworn response ( Exhibit A, p. 1, opening statement). During the subsequent submission in the appellants Motion for Reconsideration, they reiterated the same point under sworn statement. Appellants were unaware that they had to assert a defense of forgery, as the Court

10

was looking for them to do. Incorrectly, due to procedures, appellants believed that they would assert the full defense during the course of discovery leading up to, and during, a trial. The Motion for Reconsideration was a sworn statement by the defendants/appellants as to the entire document. In fact, the Court later states "In the affirmation, defendants state under penalty of perjury that "[n]one of the defendants ever personally guaranteed the note." (Def. Affirmation ¶ 7.) They further state under penalty of perjury that "[t]he signatures contained on the personal guarantee attached to the note submitted to the Court by the appellee are not the signatures of any of the defendants." "In fact, to the extent defendants ever previously contemplated a forgery defense, they relegated this serious, specific, and likely dispositive allegation to one ambiguous sentence, "Defendants did not sign personal guarantee," which they offered among eleven other defenses in the middle of an answer they never filed. The appellants did file this answer with the Court on July 29, 2011, but it was in the context of asking the Court for permission to file as a preliminary statement (EXHIBIT A), as opposed to stating that they were filing the response, due to lack of procedural knowledge as previously stated. The filing of that Proposed Answer in and of itself demonstrates that the appellants did not intend to willfully ignore the Court, submitting the proposed answer as soon as practically possible after learning of the Default Judgment. In addition, the Court suggests that this answer is a "likely dispositive allegation." There are two issues regarding that statement. First, the statement was made as early as March, when the appellants sent appellee's counsel a proposed answer (id. at ¶25 ). Second, for the Court to be so presumptive to suggest that the appellants are promulgating a false answer without seeing an original document signed by the appellants, and without having their signatures notarized, is a miscarriage of justice. It is unlikely that a statement can be made concerning the validity of

11

the document, and the signatures of the appellants, without trying the case on its merits and obtaining said documentation. Generally the Courts have a strong "preference for resolving disputes on the merits." *Powerserve Int'l, Inc. v. Lavi*, <u>239 F.3d 508</u>, 514 (2d Cir.2001) (citation omitted). A default judgment is "the most severe sanction which the court may apply." *Cody `v. Mello*, <u>59 F.3d 13</u>, 15 (2d Cir.1995) (citations omitted) and a "trial court's desire to move its calendar should not overcome its duty to do justice." There is a considerable sum of money at stake in this case, and the appellants believe they have a constitutional right to have their case heard on its merits.

26.     The Court "noted that this assertion was ambiguous because it did not explain whether defendants did not believe the document they signed was a guarantee or whether, by contrast, they accepted that it was a guarantee but denied signing it" (Appendix, Memorandum and Order). That statement in and of itself is confusing and contradictory. We cannot make an opinion as to the legitimacy of it being a guarantee, nor can we accept it as a guarantee that we did not sign, if we cannot verify the origin of the document. It would be presumptuous of us to assume any facts surrounding the document other than the fact that we did not sign it because the signatures do not match our own signatures, as we stated in our Motion for Reconsideration (id. at ¶18). We did not know from a procedural standpoint that we had to prove such, and thought that was the reason to proceed with the case and have the case heard on its merits. The appellants are definitive in our response that they did not sign the personal guarantee and find several issues at hand. First, appellants are certain that there is no original document. Without an original document, there can be no signatures in ink, which is a critical part of the argument as to why the appellants could not have signed the document. The appellants assert that there is no original document and that the appellee, if

having to produce a document at trial, would not be able to do so. Second, it is peculiar that a man possessing Mr. Saleh's financial acumen and stature, as the Chief Financial Officer of a multi-billion dollar public company, would execute a loan document, and a personal guarantee, without an original document and a notary stamp for each signature, which is customary in a majority of significant financial transactions, including those much smaller in stature than the dollar amount at hand. The appellants cannot state, without the ability to perform discovery, whether this document is legitimate, or make a determination of its origin. Appellants are requesting a trial on the merits of the case to demonstrate that they did not sign the document. Third, to reiterate, the money was not sent to Qderopateo and that the appellee sent the funds directly to Steve Chao in Hong Kong. (Exhibit D). In the attached email (Exhibit F), Mr. Saleh expressly requests the money that he lent to Mr. Chao to be returned to him from Mr. Chao. The appellants would like the opportunity to uncover all of the facts related to the transaction between Mr. Saleh and Mr. Chao. The Court has denied the counterclaim against Mr. Saleh and Mr. Chao, which is relevant in asserting the defense, since there were several people attempting to secure, and possibly divert, the intellectual property of the Company during the time period in question. The appellants believe that this loan may have had something to do with the attempted diversion of intellectual property involved in the proceedings and the money that was sent to Hong Kong. "In order to make a sufficient showing of a meritorious defense . . . the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *McNulty,* 137 F.3d at 740. Appellants clearly stated that the fact the signatures did not appear to be a match and that the signatures were not theirs. Accordingly, in ruling on a motion to vacate a default judgment, "all doubts must be resolved in favor of

the party seeking relief from the judgment in order to ensure that to the extent possible, disputes are resolved on their merits". *See Powerserve,* 239 F.3d at 514.

27.    It would be a huge windfall to the appellee to allow the default judgment to stand. The appellants have a meritorious defense. The appellants did not sign the personal guarantee and are requesting that the Court give them the chance to prove that those are not their signatures on the personal guarantee as presented by the appellee.

28.    The appellee should not be permitted to benefit in the amount of over $600,000 due to the appellants lack of understanding of the Court procedures, especially when the appellants have a meritorious defense against the appellee.  The delay occasioned by setting aside the default, as well as the necessity of going forward with trial, is not sufficient to constitute prejudice. U.S. v. One Parcel of Real Prop., 763 F.2d 181, 183 (5th Cir. 1985); Goldstein v. Gordon, 2002 WL 324289 *5 (N.D. Tex. 2002) (slip copy). See also Cody v. Mello, 59 F.3d at 16.

## CONCLUSION

In order to determine if the appellee has an original, properly signed document, the case must be tried on its merits. The appellants did not sign a document and therefore respectfully ask this Court to reverse District Order granting the appellee a Default Judgment. For the reasons

above and seek to have the Court remand this case back to the District Court for a jury trial

based on the merits of the case on all issues so triable.

Dated: New York, N.Y.

December 11, 2012

_Albert Fran_
Albert Francesco
c/o 97 Village Green Way
Hazlet, N.J. 07730
917-922-3521
Appearing Pro Se

_Christopher Buffalino_
Christopher Buffalino
c/o 97 Village Green Way
Hazlet, N.J. 07730
917-922-3521
Appearing Pro Se

_Andrew M. Gaines II_
Andrew M. Gaines II
c/o 97 Village Green Way
Hazlet, N.J. 07730
917-922-3521
Appearing Pro Se

## CERTIFICATE OF COMPLIANCE

We, Albert Francesco, Christopher Buffalino and Andrew M. Gaines, certify that this brief contains 14,000 words or less.

# UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT

CAPTION:

Saleh _____ v.

Qderopateo et al. _____

_____

**CERTIFICATE OF SERVICE**
Docket Number: 12-1939CV

I, _____ Albert Francesco _____, hereby certify under penalty of perjury that on
December 11, 2012 _____, I served a copy of _____ Appellants Brief _____
(date)

_____
(list all documents)

by (select all applicable)*

- [✓] United States Mail
- [ ] Federal Express
- [ ] Overnight Mail
- [ ] Facsimile
- [ ] E-mail
- [ ] Hand delivery

RECEIVED
U.S. COURT OF APPEALS
SECOND CIRCUIT
NIGHT DEPOSITORY
2012 DEC 11 PM 11:59

on the following parties (complete all information and add additional pages as necessary):

| Name | Address | City | State | Zip Code |
|------|---------|------|-------|----------|
| Charles E. Schmidt, Esq. | 75 Maiden Lane, Suite 402 | New York | N.Y. | 10038 |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |
| Name | Address | City | State | Zip Code |

December 11, 2012 _____        _albert Fran_____
Today's Date                              Signature

*If different methods of service have been used on different parties, please indicate on a separate page, the type of service used for each respective party.

Certificate of Service Form

# EXHIBITS

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/16/11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL SALEH
      Plaintiff

v.

- against -

ALBERT FRANCESCO,
CHRISTOPHER BUFFALINO
AND
ANDREW M. GAINES II,
      Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**11 Civ. 0438 (PKC) (DF)**

**AFFIRMATION IN OPPOSITION
TO MOTION**



PLEASE TAKE NOTICE that the defendants, **ALBERT FRANCESCO, CHRISTOPHER BUFFALINO AND ANDREW M. GAINES II,** affirm under penalty of perjury that:

1. We are Defendants in the above-entitled action, and respectfully submit this Affirmation in Opposition to Plaintiff's motion dated July 6, 2011 whereby Plaintiff is requesting a Default Judgment against the Defendants herein pursuant to F.R.C.P. 60(b)(6).

2. I herein refer to my letter dated July 29th submitted herein to be incorporated by reference to the instant Opposition. I personally possess knowledge of crucial facts which affect the instant motion and opposition based upon confusion crucial to the Defendant's entitlement to their day in Court and to presenting Defenses and Counterclaims in this Matter.

3. Each of the Defendants herein respectfully request that the motion should be denied because of the confusion in this case, in which the Plaintiff did not have a proper service address for Albert Francesco

**EXHIBIT A**

RECEIVED
AUG 18 2011
PRO SE OFFICE

and the defendants have not received any case related correspondence by mail or otherwise. Should the Court see fit to deny Plaintiff's Motion for a Default herein, Defendant will submit the proposed answer annexed hereto immediately.

4. The defendants seek entitlement to their day in Court and to have the case continued, and shall supply the Court with the proper service addresses herewith.

5. The Defendants respectfully seek to consolidate their motions/responses to the Court in a single document since the answers will be the same for all defendants as to the content of the responses.

6. In view of the foregoing, it is respectfully submitted that the motion should be denied in its entirety along with any other remedies the Court sees fit.

**We declare under penalty of perjury that the foregoing is true and correct.**

Dated: August 16, 2011
Albert Francesco
Signature: _Albert Fran_____
Address: 97 Village green Way
       Hazlet, N.J. 07730
Telephone Number: 917-204-2879

Dated: August 16, 2011
Christopher Buffalino
Signature: _____
Address: 439 Whitebridge Road
       Hampstead, N.C. 28443
Telephone Number: 910-795-8674

Dated: August 16, 2011
Andrew M. Gaines II
Signature: _____
Address: 616 Caicos Court
       Wilmington, N.C. 28403
Telephone Number: 910-352-1536

and the defendants have not received any case related correspondence by mail or otherwise. Should the Court see fit to deny Plaintiff's Motion for a Default herein, Defendant will submit the proposed answer annexed hereto immediately.

4. The defendants seek entitlement to their day in Court and to have the case continued, and shall supply the Court with the proper service addresses herewith.

5. The Defendants respectfully seek to consolidate their motions/responses to the Court in a single document since the answers will be the same for all defendants as to the content of the responses.

6. In view of the foregoing, it is respectfully submitted that the motion should be denied in its entirety along with any other remedies the Court sees fit.

**We declare under penalty of perjury that the foregoing is true and correct.**

Dated: August 16, 2011
Albert Francesco
Signature: _____
Address: 97 Village green Way
      Hazlet, N.J. 07730
Telephone Number: 917-204-2879

Dated: August 16, 2011
Christopher Buffalino
Signature: _____
Address: 439 Whitebridge Road
      Hampstead, N.C. 28443
Telephone Number: 910-795-8674

Dated: August 16, 2011
Andrew M. Gaines II
Signature: _____
Address: 616 Caicos Court
      Wilmington, N.C. 28403
Telephone Number: 910-352-1536

Francesco and the defendants have not received any case related correspondence by mail or otherwise.  Should the Court see fit to deny Plaintiff's Motion for a Default herein, Defendant will submit the proposed answer annexed hereto immediately.


4. The defendants seek entitlement to their day in Court and to have the case continued, and shall supply the Court with the proper service addresses herewith.


5. The Defendants respectfully seek to consolidate their motions/responses to the Court in a single document since the answers will be the same for all defendants as to the content of the responses.

6. In view of the foregoing, it is respectfully submitted that the motion should be denied in its entirety along with any other remedies the Court sees fit.

**We declare under penalty of perjury that the foregoing is true and correct.**

Dated: August 16, 2011
Albert Francesco
Signature: _____
Address: 97 Village green Way
        Hazlet, N.J. 07730
Telephone Number: 917-204-2879

Dated: August 16, 2011
Christopher Buffalino
Signature: _____
Address: 439 Whitebridge Road
        Hampstead, N.C. 28443
Telephone Number: 910-795-8674

Dated: August 16, 2011
Andrew M. Gaines III
Signature: _____
Address: 616 Caicos Court
        Wilmington, N.C. 28403

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------
PAUL SALEH,                                       :
                                                  :
            Plaintiff,                            :
                                                  :
v.                                                :
                                                  :          11 Civ. 0438 (PKC) (DF)
ALBERT FRANCESCO, CHRISTOPHER                     :
BUFFALINO, ANDREW M. GAINES II,                   :
            Defendants                            :
----------------------------------------------------------------x

Defendants Answers Plaintiff's Amended Complaint for Damages as follows:

Under provisions of the Federal Code of Civil Procedure, Defendants generally deny all of the

allegations in the Complaint for Damages, and each cause of action thereof, and further generally denies

that Plaintiff sustained damages alleged, or at all.

## ANSWER

### PRELIMINARY STATEMENT

1. Defendants are without information sufficient to admit or deny the allegations of this

paragraph and, accordingly, deny same.

2. Defendants are without information sufficient to admit or deny the allegations of this

paragraph and, accordingly, deny same.

3. Defendants are without information sufficient to admit or deny the allegations of this

paragraph and, accordingly, deny same.

4. Denied.

### PARTIES AND JURISDICTION

5. Defendants are without information sufficient to admit or deny the allegations of this

paragraph and, accordingly, deny same.

6. Admitted.

Case 12-1939, Document 52, 13/11/2012, 802291, Page26 of 92

7.    Admitted.

8.    Admitted.

9.    Admitted.

10.   Admitted.

11.   Defendants admit that this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), but denies that any of Plaintiff's claims asserted against Defendants are meritorious. Defendants deny the remaining allegations of this paragraph.

12.   Admitted.

**FACTS RELEVANT TO ALL CLAIMS**

13.   Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

14.   Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

15.   Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

16.   Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

17.   Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

18.   Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

19.   Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

20.    Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

21.    Defendants admit that a wire transfer of $100,000 was sent to Plaintiff on September 23, 2010, but denies that any of Plaintiff's claims asserted against Defendants are meritorious.  Defendants deny the remaining allegations of this paragraph.

22.    Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

23.    Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

24.    Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

25.    Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

<u>**COUNT ONE**</u>

<u>**BREACH OF CONTRACT (LOAN AGREEMENT)**</u>

26.    Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

27.    Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

28.    Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

29.    Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

## COUNT TWO

### BREACH OF CONTRACT (PERSONAL GURANTEE)

30. Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

31. Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

32. Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

33. Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

### RELIEF REQUESTED

Defendants deny that Plaintiff is entitled to judgment in its favor, or to any other relief whatsoever.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

1. Defendants did not sign personal guarantee.

### SECOND AFFIRMATIVE DEFENSE

2. Plaintiff failed to state a claim for which relief may be provided.

### THIRD AFFIRMATIVE DEFENSE

3. Plaintiff failed to mitigate its damages, if any.

### FOURTH AFFIRMATIVE DEFENSE

4. If Plaintiff was damaged, either as alleged in the Complaint or at all, such damages were directly and proximately caused by Plaintiff's negligence and Plaintiff's recovery, if any, should be reduced in proportion to their comparative fault.

## FIFTH AFFIRMATIVE DEFENSE

5.    If Plaintiff was damaged, either as alleged in the Complaint or at all, such damages were directly and proximately caused by the comparative fault of others, whether or not parties to this action, and Plaintiff's recovery if any, should be reduced in proportion to their comparative fault of those parties.

## SIXTH AFFIRMATIVE DEFENSE

6.    If Plaintiff was damaged, either as alleged in the Complaint or at all, such damages were caused by the unforeseeable criminal actions of third parties of which Defendants had no control.

## SEVENTH AFFIRMATIVE DEFENSE

7.    Plaintiff, by its own acts or conduct, is estopped from asserting any claims or damages or seeking any other relief whatsoever against Defendants.

## EIGHTH AFFIRMATIVE DEFENSE

8.    Plaintiff, by its own acts or conduct, has waived and/or released all claims, if any, against Defendants.

## NINTH AFFIRMATIVE DEFENSE

9.    Plaintiff's claims are barred by the doctrines of latches, estoppel, and/or waiver, to the extent shown by further discovery.

## TENTH AFFIRMATIVE DEFENSE

10.    Defendants give notice that they intend to rely on other defensed that become available during the discovery proceedings in this case and reserve the right to amend its answer to assert any such defense.

## ELEVENTH AFFIRMATIVE DEFENSE

11.    Plaintiff failed to complete Loan documentation process by not signing loan document and notifying Defendants of the consummation of the loan.

**TWELFTH AFFIRMATIVE DEFENSE**

11.  Defendants did not have possession of funds at any time.


**COUNTERCLAIMS**

1.  Plaintiff engaged with those whom he wired money to obtain equity in Company in exchange for money wired.

2.  Plaintiff caused material damage to Company as a result of plaintiff's actions.

3.  Plaintiffs actions, in conjunction with Qdero Limited (BVI), caused Plaintiff, owners of Qdero Limited (BVI) and other third party members to begin a competing company named QPC, Ltd. (Caymans) that attempted to utilize Intellectual Property owned by Qderopateo LLC, a defendant in the Plaintiff's original case, for its own gain.

4.  Plaintiff attempted to receive equity in QPC, Ltd. and caused irreparable damage to Qderopateo LLC and Defendants.

5.  As a result of Plaintiff's involvement in facilitating the transaction with the above named members and third party solicitors, and the establishment of a company that attempted to utilize the Intellectual property and other relationships of Qderopateo LLC, thereby nullifying a deal with a reputable purchaser, Defendants seek compensation from Plaintiff in the sum of $10,500,000.


**CROSS CLAIMS**

1.  Whereas, Plaintiff lent money to Qdero Limited Hong Kong via direct wire transfer from the Plaintiff's account, Defendants seek the return of the money from Qdero Limited Hong Kong, to the Plaintiff.

Case 12-1939, Document 52, 12/11/2012, 802291, Page31 of 92

## THIRD PARTY CLAIMS

1.  Whereas, on information and belief, Qdero Limited (BVI)and Qdero Limited Hong Kong., Defendants in the original complaint made by Plaintiff, are owned by Mr. Steve Yi Long Chao, a United States citizen living in Shanghai, China on a Visa granted by the United States Government. Defendant seeks to serve Complaint on Mr. Chao as per its rights under Rule 14 of the Federal Rules of Civil Procedure.

2.  Whereas, on information and belief, Mr. Chao claims to have wired funds to Mr. Henry Yau, also a United States citizen believed to be living in Shanghai, China on a Visa from the United States Government. Defendant seeks to serve Complaint on Mr. Yau as per its rights under Rule 14 of the Federal Rules of Civil Procedure.

3.  Defendant wishes to have parties settle this complaint, which is by and among the Plaintiff and the Third Party claimants.

4.  Defendant seeks remuneration of $596,000, plus interest, from Mr. Chao and Mr. Yau, collectively.

## DEFENDANTS' PRAYER FOR RELIEF

WHEREFORE, DEFENDANT respectfully prays that the Court grant the following relief:

A. Entry of judgment in DEFENDANTS' favor on each and every count of Plaintiff's Complaint;

B. Entry of an order directing that DEFENDANTS ' are not liable to Plaintiff for any damages pursuant to Plaintiff's Complaint;

## JURY DEMAND

DEFENDANTS request a trial by jury on all issues so triable.


Dated: New York, New York
_____, 2011

_____

Albert Francesco
97 Village Green Way
Hazlet, N.J. 07730
(917) 204-2879 (telephone)
Northstar275@gmail.com

Appearing Pro Se


_____

Christopher Buffalino
439 Whitebridge Road
Hampstead, N.C. 28443
(910) 795-8674 (telephone)
chrisbuffalino@gmail.com

Appearing Pro Se


_____

Andrew M. Gaines II
616 Caicos Court
Wilmington , N.C. 28405
(910) 795-8674 (telephone)
chrisbuffalino@gmail.com

Appearing Pro Se

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Paul Saleh

_____

*(In the space above enter the full name(s) of the plaintiff(s)/petitioner(s).)*

_11_ Civ. _0438_ _(PKC)_ _(DF)_

**AFFIRMATION OF SERVICE**

- against -

Albert Francesco
Chris Buffalino
Andrew M. Gaines II

_____

*(In the space above enter the full name(s) of the defendant(s)/respondent(s).)*

I, _Albert Francesco_, **declare under penalty of perjury** that I have
    *(name)*

served a copy of the attached _Affirmation in Opposition to Motion_
                                    *(document you are serving)*

upon _Charles Schmidt, ESQ_ whose address is _75_
      *(name of person served)*

_Maiden Lane, Suite 402_, New York, N.Y. _10038-4816_
                        *(where you served document)*

by _U.S. Mail_.
        *(how you served document: For example - personal delivery, mail, overnight express, etc.)*

Dated: _New York_, _NY_
        *(town/city)*   *(state)*

_Aug_     _16_, 20_11_
*(month)*  *(day)* *(year)*

_albert Fran_
**Signature**

_97 Village Green Way_
**Address**

_Hazlet_, _NJ_
**City, State**

_07730_
**Zip Code**

_917-204-2879_
**Telephone Number**

*Rev. 05/2007*



# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

RECEIVED
NY PRO SE OFFICE.

2011 AUG 25 PM 5:48

# MEMORANDUM
*Pro Se* Office

**To:** The Honorable P. Kevin Castel, U.S.D.J.

**From:** J. Street , *Pro Se* Office, x0177

**Date:** AUG 16 2011

**Re:** Saleh v. Oderopateo LLC, et Al. 11cv4138(PKc) CDCF

The attached document, which was received by this Office on ___AUG 16 2011___, has been submitted to the Court for filing. The document is deficient as indicated below. Instead of forwarding the document to the docketing unit, I am forwarding it to you for your consideration. <u>See</u> Fed. R. Civ. P. 5(d)(2)(B), (4). Please return this memorandum with the attached papers to this Office, indicating at the bottom what action should be taken.

( )  No original signature.

( )  No affirmation of service/proof of service.

( )  The document appears to be a request in the form of a letter.

(X)  Other: The Attached lacks An Original signature from all three(3) defendants

( ) **ACCEPT FOR FILING**          ( )  **RETURN TO *PRO SE* LITIGANT**

_____
United States District Judge

**Comments:**
_____
_____
_____
_____

_____
United States Magistrate Judge

Dated:



Transaction Search Summary/Details Page - Microsoft Internet Explorer

File Edit View Favorites Tools Help

Back Search Favorites

J.P.Morgan

Today's Date: Thursday, July 08, 2010
Current Time: 14:49:19 ET
Business Date: Thursday, July 08, 2010

Customer Support | Downloads | Help | Log Off
User Name: jeanette thompson

Home | Initiation | Approval | Search | Reports

Search > Funds Transfer > Transaction Search Details

**Payment Type and Details >**

| | | | |
|---|---|---|---|
| Transaction Date: | 08-Jul-10 | Status: | Complete |
| Amount: | $596,000.00 | Transaction Type: | Outgoing CHIPS |
| Chips SSN #: | 0279135 | JPMorgan Reference: | 2037500189JJ |
| DR Value Date: | | CR Value Date: | 08-Jul-10 |

**Sending Party >** / **Credit Party >**

| | | | |
|---|---|---|---|
| Account ID: | DDA - 066001633 | Account ID: | MBR - 0799 |
| Name: | J.P. MORGAN CLEARING CORP | Name: | UBS AG |
| Address: | ONE METROTECH CENTER NORTH<br>BROOKLYN NY 11201-3862 | Address: | 677 WASHINGTON BOULEVARD<br>STAMFORD CT 06912-0305 |

**Third Party >** / **Fourth Party >**

| | | | |
|---|---|---|---|
| Account ID: | DDA - 101WA257152000 | Account ID: | DDA - 355823 |
| Name: | EFG BANK AG, HONG KONG BRANCH | Name: | QDERO LTD |
| Address: | 18TH FL INTERNATIONAL COMMERCE CTR<br>1 AUSTIN ROAD WEST<br>KOWLOON, HONG KONG | Address: | |

**Order Party >** / **Order Bank >**

| | | | |
|---|---|---|---|
| Account ID: | DDA - 2203298217 | Account ID: | |
| Name: | MR PAUL SALEH | Name: | JPMCLEARING CORP |
| Address: | 2219 ARYNESS DRIVE<br>VIENNA VA221813047 | Address: | METROTECH CENTER<br>BROOKLYN NY |

**4th Credit Party >**

Account ID:
Name:
Address:

**Other Information >**

| | | | |
|---|---|---|---|
| Credit Advice: | None | Cr Adv Type: | |
| Debit Reference: | 0128300006 | Source: | 103 |
| Credit Reference: | SWF OF 10/07/08 | Bank/Bank Info: | |
| Release Time(EST): | 11:23:52 | | |
| Existing Inquiry: | No | | |
| Payment Details: | ATTN: MS SHIRLEY FONG | Cover Payment: | No |

GFP Audit Info | Create an Inquiry |

This email is confidential and subject to important disclaimers and conditions chase or sale of securities, accuracy and completeness of information, viruses, c
and legal entity disclaimers, available at http://www.jpmorgan.com/pages/dis

**EXHIBIT B**



About     Our Team     Investments     Services     News     Contact

Broadband     Mobile Media     Online Applications     Ambient Intelligence

## Current Investments

### Wimax Technology



Together, AOC and XGEN represent industry leaders in the wireless and terrestrial communications, and in the Government contracts and grants arena. Representing a combined technology and Government contracting experience of over 45 years, AOC-XGEN Wireless, LLC is positioned to lead the industry in providing broadband access to under-served areas nationwide.

### Ambient Intelligence



Visionary Duo Aims to Bring Articulated Naturality into Mainstream Culture Young Entrepreneurs Forge 21st Century Partnership from Half a World Away; New Natural Urban Feature Tracking and Image Mapping Technology Marries Virtual and Real-World Environments for More 'Natural' Augmented Reality Experience.

In the midst of the frenetic chaos that is New York City's Times Square, an overwhelmed tourist stands astonished by the incredible pace, the mass of humanity, the wonderment of light and sound. Seeking a cozy bistro and comfortable accommodations, he considers asking a passerby for a recommendation, but stops short, wishing instead that he had sought the input of his local travel agent for a personal recommendation.

In the world envisioned by Steve Chao and Matt Gaines, this tentative traveler would need only lift his mobile phone into his field of view to reveal a plethora of information about nearby dining and hotel options - complete with menus, prices, discounts and peer reviews - instantly transforming the bustling landscape into a user-friendly interactive environment. Had he been there before him, his local agent may even appear as a 3D avatar to provide an on-the-spot personal recommendation to help guide his choice.



This is the world of QderoPateo (Latin for great hope soon to

### What's New

**Broadband Stimulus**
AOC-XGEN's first step to bring broadband service to the under-serv areas of our nation was made by submitting an application for the Broadband Technology Opportunitie Program (BTOP). Under the BTOP program, $4.7 billion of stimulus mor being provided to support the deploy of broadband infrastructure.

**Augmented Reality**
Menza Partners is engaged in augm reality, a technology that blends virtu generated and real-world data togeth Users are able to interact in real time that digitally processed data can be superimposed onto live imagery - the creating a modified picture of the rea world.

**EXHIBIT C**

**ALBERT FRANCESCO**

97 Village Green Court

Hazlet, New Jersey 07730

**CHRISTOPHER BUFFALINO**

439 Whitebridge Road

Hampstead, N.C. 28443

**ANDREW M. GAINES II**

616 Caicos Ct.

Wilmington, N.C. 28405

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/5/11

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

---

**PAUL SALEH,**

                                        **Plaintiff,**

          -against-

**ALBERT FRANCESCO,**

**CHRISTOPHER BUFFALINO and**

**ANDREW M. GAINES, II,**

                                        **Defendants.**

**11 Civ. 438 (PKC)**

**NOTICE OF MOTION**

**FOR RECONSIDERATION;**

**TO VACATE DEFAULT**

**JUDGMENT; AND TO STAY**

**EXECUTION OF JUDGEMENT**

---

SIRS:

          PLEASE TAKE NOTICE, that upon the attached affidavit of Albert J. Francesco,

Christopher Buffalino and Andrew M. Gaines, II, sworn to on 28th day of November, 2011, and

**EXHIBIT D**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PAUL SALEH
_____

RECEIVED

2011 NOV 28 P 9 55

U.S. DISTRICT COURT SDNY

*(In the space above enter the full name(s) of the plaintiff(s)/petitioner(s).)*

11 Civ. 438 (PKC) (DF)

- against -

Albert Francesco
Christopher Buffalino
Andrew M. Gaines II
_____

**AFFIRMATION OF SERVICE**

*(In the space above enter the full name(s) of the defendant(s)/respondent(s).)*

I, __Albert Francesco__, declare under penalty of perjury that I have
   *(name)*

served a copy of the attached __Motion of Reconsideration to vacate default judgement__
                                *(document you are serving)*

upon __Charles E. Schmidt, ESQ__ whose address is __75__
      *(name of person served)*

__Maiden Lane  Ste 402, N.Y., N.Y. 10038-4816__
                *(where you served document)*

by __Mail__
   *(how you served document: For example - personal delivery, mail, overnight express, etc.)*

Dated: __New York__, __NY__
         *(town/city)*   *(state)*

__November__ __28__, 20__11__
  *(month)*   *(day)* *(year)*

__Albert Fran__
Signature

__97 Village Green Court__
Address

__Hazlet, N.J. 07730__
City, State

_____
Zip Code

__917-204-2879__
Telephone Number

*Rev. 05/2010*

upon all the prior proceedings , defendants will move this Court, before the Honorable P. Kevin

Castel, U.S.D.J., United States Courthouse, 500 Pearl Street, New York, New York  10007-1312,

on the 28th day of November, 2011 at 10:00 a.m. or as soon thereafter as counsel can be heard,

for an order pursuant to Federal Rules of Civil Procedure Sections 55, 60(b), 56, 58, 59, 59(e),

granting Reconsideration of the Order dated 10th day of November, 2011; vacating the default

judgment in this matter; staying execution of the judgment pending hearing and determination of

this motion; allowing Defendants to proceed in prosecuting their counterclaim; and in setting

aside the granting of attorneys' fees as unwarranted and unreasonable.

Dated: New York, New York
      November 28, 2011

                                        *Albert Fran*

                                 Albert Francesco, Pro Se
                                 97 Village Court
                                 Hazlet, New Jersey 07730

To: Clark Hill PLC
    Brian M. Ziff and Steven C. Lawrence
    14850 N. Scottsdale Rd.-Suite 500
    Scottsdale, Arizona 85254

    Kennedy Lillis Schmidt & English
    Charles E. Schmidt
    Attorneys for the plaintiff
    75 Maiden Lane-Suite 402
    New York, NY 10038-4816

ALBERT FRANCESCO
97 Village Green Court
Hazlet, New Jersey 07730

CHRISTOPHER BUFFALINO
439 Whitebridge Road
Hampstead, N.C. 28443

ANDREW M. GAINES II
616 Caicos Ct.
Wilmington, N.C. 28405

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

---

PAUL SALEH,

                     Plaintiff,

                -against-

ALBERT FRANCESCO,

CHRISTOPHER BUFFALINO and

ANDREW M. GAINES, II,

                     Defendants.

11 Civ. 438 (PKC)

AFFIRMATION IN SUPPORT
OF MOTION FOR
RECONSIDERATION; TO
VACATE DEFAULT
JUDGMENT; AND TO STAY
EXECUTION OF JUDGMENT

---

STATE OF NEW YORK   )
                       )ss:
COUNTY OF NEW YORK)

ALBERT FRANCESCO, being duly sworn deposes and says:

1. I am a defendant in this action and as such I am fully familiar with the facts and
   circumstances in this matter.

2. I submit this affidavit on behalf of myself and my co-defendants Christopher Buffalino and Andrew M. Gaines II. (See affidavits annexed hereto as Exhibit _A_).

3. This affidavit is being submitted in support of the instant motion for the following relief pursuant to F.R.C.P. 55, 60(b), 56, 58, 59, 59(e):

1. For Reconsideration based upon the premise that the Court overlooked and/or misapprehended relevant facts and law in the earlier decision in this matter whereby Plaintiff moved and obtained a default judgment;

2. For the Court to vacate the default judgment in this matter;

3. For the Court to stay execution of the judgment pending hearing; determination of the instant motion;

4. For the Court to allow Defendants to prosecute their counterclaim; and

5. To set aside attorneys' fees awarded as unwarranted and unreasonable.

## BACKGROUND

4. Qderopateo is a business that possesses cell phone technology. The three owners of Qderopateo are three entities Qdero Ltd., Pateo LLC, and CWG Novus. The entity of Pateo consists of the three named defendants. Qdero Ltd. consists of Steve Chao, Henry Yau and Stanley Tong. CWG Novus is a fund that invested in Qderopateo.

5.  Qderopateo was in the process of selling its technology to Vodafone PLC.

6.  Defendants Gaines and Buffalino, Frank Pipolo of CWG Novus and the plaintiff went to China in order to promote the business of Qderopateo. The plaintiff represented himself as an advisory member of Qderopateo.

7.  Thereafter, the plaintiff agreed to provide funding to Qderopateo. The note was signed by defendant Gaines on behalf of Qderopateo. **None of the defendants ever personally guaranteed the note. The signatures contained on the personal guarantee attached to the note submitted to the Court by the plaintiff are not the signatures of any of the defendants.**

8.  The plaintiff wired the money directly to Steve Chao. That money never passed through Qderopateo or the Defendants in any form.

9.  The plaintiff received a call from a representative of Vodafone while they were performing their due diligence. Vodafone wanted verification that the plaintiff in fact loaned money to Qderopateo. When the plaintiff confirmed it, the plaintiff was asked that if Vodafone acquired Qderopateo, would the plaintiff exchange the amount of the loan for equity in the new business. The plaintiff responded in the affirmative.

10. It was in the plaintiff's best personal interests to help orchestrate the transaction so that Qderopateo was acquired by Vodafone and he acquired equity in the new entity in exchange for his loan.

Case 12-1939 Document 52 12/11/2012 802291 Page 43 of 92

11. After breaching his fiduciary duty to Qderopateo by placing his personal interests above everyone else's including the business itself, the plaintiff started an action against Qderopateo. (Exhibit _B_, the original complaint).

12. The defendants Buffalino and Gaines were served sometime in February 2011. The co-defendants advised me of the complaint against Qderopateo. We sought an attorney but could not afford the retainer. In March 2011 (2 months before I was served), the plaintiff's attorney sent e-mails to all of the defendants seeking an answer.

13. The e-mails were premature. Defendants Buffalino and Gaines were waiting for me to be served so that we could submit one answer. In good faith, I sent on behalf of all defendants, a copy of a proposed answer (Exhibit _C_) to Plaintiff's attorney.

14. Thereafter, the plaintiff prepared an amended complaint (Exhibit _D_)which lists the three individuals as defendants. Qderopateo is no longer listed as a defendant. There has been no explanation on the part of the plaintiff was to why the individual defendants were not named as defendants in the original complaint if there truly was a personal guarantee on that note. The co-defendants were thereafter served with the amended complaint.

15. I received a phone call from plaintiff's attorney advising that they were having trouble locating me to serve me. I was forthright about my location and I agreed to meet with a representative to accept service in May 2011.

16. The plaintiff's attorney did not ask for an answer after the amended complaint was served. Because we are not attorneys and we had served an answer to the first

complaint, we were confused about the next step. Based upon our first answer, plaintiff's counsel was well aware of our position and our defenses.

17. Plaintiff's counsel moved for a default judgment. That is when we realized that we could not rely upon our original answer and in July 2011, I wrote to the court asking for an extension of time to serve an answer to the amended complaint. We also included a proposed answer to the amended complaint that contained a counterclaim. We did not know that we needed permission from the plaintiff's attorney to extend our time to answer. Plaintiff's attorney was aware of our request to the Court because he was copied on the letter.

18. We were not aware that we had to explain to the court in detail at this time why our defenses had merit. We thought that was something that we would have the opportunity to prove to the Court during the proceedings.

19. Also, we did not know that we needed to sign the answer to the amended complaint at that point. We thought that after we had permission to serve it that we would sign it. It is currently signed and all information contained within it is accurate.

20. The answer to the amended complaint contains a counterclaim for the breach of a fiduciary duty on the part of the plaintiff. He was an advisory member of the entity Qderopateo and he breached that duty by wiring the money directly to Steve Chao.

21. We just learned approximately one week ago that the plaintiff, who is the CEO of Menza Partners, a private equity group at the website www.menzapartners.com (Exhibit _E_), posted that Menza Partners currently maintains an investment in

Qderopateo. A loan to a company is not an investment. It has been the plaintiff's intention to obtain an equity position in the business. His website is an admission.

## LEGAL ARGUMENT

22.  F.R.C.P. Rule 60(b) states as follows:

"On motion and just terms, the Court may relieve a party or its legal representative from a final judgment, order or its legal representative from a final judgment, order or proceeding for the following reasons:

1.  Mistake, inadvertence, surprise or excusable neglect;

2.  Newly discovered evidence that with reasonable diligence, could not have been discovered in time to move for a new trial under R.59(b).

3.  Fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party.

4.  The judgment is void.

5.  The judgment has been satisfied etc…

6.  Any other reason that justifies relief."

23.  The Court mistakenly found that the defendant did not request additional time to answer the amended complaint. The defendants asked for additional time from the Court in July 2011 and attached a proposed answer.

24.    There was never any intent on the part of the defendants to admit liability. My letter to the Court in July 2011 and the proposed answer with counterclaim evidence our intent to defend this matter and prosecute a counterclaim.

25.    There is a strong preference for resolving claims on the merits. Courts tend to make reasonable allowances for pro se litigants.

26.    It is our position that there is good cause for vacating the default judgment and allowing the defendants to serve their answer with counterclaim.

27.    The default on the part of the defendants was not willful. We were not sure how to proceed after we sent an answer to the plaintiff's attorney and then an amended complaint was served. The service of our original answer on plaintiff's counsel with affirmative defenses clearly evidenced our intent to defend this matter.

28.    We understand the Court's statement that there would be prejudice to the plaintiff if interest were to continue accruing. However, it is requested that the Court weigh this concern against the fact that the defendant did not sign a personal guarantee on that note. A cursory review of the signature of Mr. Gaines contained on the note as opposed to the one contained on the personal guarantee shows that it is not his signature. The signatures for the remaining defendants on the personal guarantee are not those of the defendants.

29.    If the Court would hear our defenses, we believe that the Court will find in our favor and hold that there never was a personal guarantee on that note. We believe that it would inherently unfair to hold that the defendants are personally liable on a note that they never personally guaranteed without giving the defendants their day in Court.

30.    It would be a huge windfall to the plaintiff to allow the default judgment to stand.

31.    The defendants have a meritorious defense. We did not sign that personal guarantee. We are asking the Court to look at the signatures on the affidavits as opposed to the signatures on the original note.

32.    The plaintiff should not be permitted to benefit in the amount of over $600,000 due to the defendants lack of understanding of the Court procedures, especially when the defendants have a meritorious defense and a viable counterclaim against the plaintiff.

33.    We would also ask that the Court reconsider the finding on attorneys' fees as unreasonable. There was no need for two law firms to work on this matter. One of the law firms is not even located within the state. The plaintiff's attorneys' work amounted to drafting two complaints, some efforts to look for me which upon being contacted I provided my information, and writing the motion for a default judgment. Thirty thousand dollars is beyond excessive.

34.    Based upon all of the evidence it is requested that the Court vacate the default judgment, allow the defendants to serve their answer and proceed with this matter on the merits.

35.     It is also requested that the Court issue an order staying execution of the default judgment pending the hearing and determination of the instant motion.


Albert Francesco


Sworn to before me this


__26TH__ day of __NOVEMBER__ , 2011


Notary Public

JEAN ROBERT SAVAILLE
Notary Public
State of New Jersey
My Commission Expires Dec 2, 2013

# EXHIBIT A

# AFFIDAVIT

## of Christopher Buffalino

I, Christopher Buffalino, being duly sworn, depose and state as follows:

That I agree to the foregoing said statements contained in the attached Motion of Albert Francesco and that I never signed the personal guarantee to any such alleged loan that is at issue in this matter and that I do not recognize any such alleged signature as my own.

November 28, 2011

_____

Christopher Buffalino

Sworn to before me this

_28_ day of _November_, 2011

_____

Notary Public

XIOMARY MONTANO
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES MAY 29, 2012

Case 12-1839   Document 52   12/11/2012   802291   Page51 of 92

# AFFIDAVIT

## of Andrew M. Gaines II

I, Andrew M. Gaines II, being duly sworn, depose and state as follows:

That I agree to the foregoing said statements contained in the attached Motion by Albert Francesco and that I never signed the personal guarantee to any such alleged loan that is at issue in this matter and that I do not recognize any such alleged signature as my own.

November 28, 2011

_____
Andrew M. Gaines II

Sworn to before me this

28rd day of _November_, 2011

_____
Notary Public

SHEHADEH AREF SHEHADEH
COMM. # 1866677
NOTARY PUBLIC - CALIFORNIA
SAN MATEO COUNTY
My Comm. Exp. Oct. 27, 2013

Judge Castel, if it pleases the Court I am asking for permission to file my Affidavit via a copy supplied by email to Albert Francesco on November 28, 2011 as I am in California and unable to provide an original signature this day. I will Fed Ex the original signature today and it will be entered with the Court tomorrow, November 29, 2011.

Thank you for your consideration regarding this matter.


Andrew M. Gaines II

_____
Andrew M. Gaines II



Sworn to before me this


29th day of _November_____, 2011

_____
Notary Public


SHEHADEH AREF SHEHADEH
COMM. # 1866677
NOTARY PUBLIC - CALIFORNIA
SAN MATEO COUNTY
My Comm. Exp. Oct. 27, 2013

# EXHIBIT B

Case 12-1939 Document 52 12/11/2012 802291 Page54 of 92
Case 1:11-cv-00438-PKC -DCF Document 32 Filed 12/05/11 Page 18 of 55
Case 1:11-cv-00438-PKC Document 1 Filed 01/20/11 Page 1 of 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL SALEH,<br><br>                              Plaintiff,<br><br>            v.<br><br>QDEROPATEO LLC, QDERO LIMITED (BVI),<br>QDERO LIMITED HONG KONG,<br>ALBERT FRANCESCO, CHRISTOPHER<br>BUFFALINO, ANDREW M. GAINES II,<br><br>                              Defendants. | Case No.  11 CV 0438 (PKC) (DF)<br><br><br><br>**COMPLAINT** |

Plaintiff Paul Saleh ("Saleh"), for his Complaint against Defendants Qderopateo LLC ("Qderopateo"), Qdero Limited (BVI) ("QBVI"), Qdero Limited Hong Kong ("QHK"), Albert Francesco ("Francesco"), Christopher Buffalino ("Buffalino") and Andrew M. Gaines II ("Gaines") hereby alleges as follows:

## PRELIMINARY STATEMENT

1.      This action arises out of the breach of a promissory note by borrower Qderopateo and its wholly owned subsidiaries QBVI and QHK, and subsequent breaches of related personal guarantees by Francesco, Buffalino, and Gaines (collectively the "Guarantors").

2.      Via a "Loan Agreement" (copy attached hereto as Exhibit A), Saleh agreed to lend and did lend the sum of $596,000 to Qderopateo, QBVI, and QHK.

3.      This loan was personally guaranteed by Francesco, Buffalino, and Gaines via a "Personal Guarantee" (copy attached hereto as Exhibit B).

4.      Despite demand, Defendants have failed to meet their payment obligations under the Loan Agreement and the Personal Guarantee.  Plaintiff therefore seeks to recover all amounts due under the Loan Agreement and Personal Guarantee.

## PARTIES AND JURISDICTION

5.      Saleh is a resident of the State of Virginia.

6.    On information and belief, Qderopateo is a limited liability company organized under New York law and authorized to conduct business in the State of New York.

7.    On information and belief, QBVI is a limited partnership organized under the laws of the British Virgin Islands.

8.    On information and belief, QHK is a limited partnership organized under the laws of Hong Kong, China.

9.    On information and belief, Guarantor Francesco is a resident of the State of New Jersey.

10.    On information and belief, Guarantors Buffalino and Gaines are residents of the State of North Carolina.

11.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) as there is complete diversity among the parties and the amount in controversy exceeds $75,000.00, exclusive of interest, fees, and costs.

12.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

## FACTS RELEVANT TO ALL CLAIMS

13.    On July 7, 2010, Saleh, on the one hand, and Qderopateo, QBVI, and QHK on the other entered into a Loan Agreement whereby Saleh lent the principal sum of $596,000.00 to Qderopateo, QBVI, and QHK.

14.    Pursuant to the Loan Agreement, interest on the loan amount is computed at twenty percent (20%) annually and is payable on a monthly basis.

15.    The term of the loan was from the execution date of the Loan Agreement through September 10, 2010.

16.    The entire unpaid balance of the loan as of September 10, 2010, was due and payable as of that date per the Loan Agreement.

17.    Qderopateo, QBVI, and QHK further agreed to pay all costs, interest, and reasonable attorney's fees incurred by Saleh in collecting any amounts due under the Loan Agreement.

2

6864134.1 36126/141614
6864134.1 36126/141614

Case 12-1939, Document 52, 12/11/2012, 802291, Page56 of 92
Case 1:11-cv-00438-PKC -DCF    Document 32    Filed 12/05/11    Page 20 of 55
Case 1:11-cv-00438-PKC    Document 1    Filed 01/20/11    Page 3 of 11

18.     On July 7, 2010, the Guarantors each executed a Personal Guarantee under which each agreed, unconditionally and irrevocably, to be jointly and severally liable for the full amount of the loan made to Qderopateo, QBVI, and QHK.  These guarantees were specifically referenced in the Loan Agreement.

19.     In the Personal Guarantee, the Guarantors each waived the defenses of default, nonpayment, and notice thereof, and consented to any modification or renewal of the Loan Agreement.

20.     Guarantors further agreed to pay all costs, interest, and reasonable attorney's fees incurred by Saleh in collecting any amounts due under the Personal Guarantee.

21.     Saleh received a wire transfer of $100,000.00 on September 23, 2010, after the full balance of the Loan had become due and payable.

22.     This $100,000 payment was applied to accrued interest at that time (79 days of interest at 20 percent per annum, or $25,800), with the remainder applied to principal.

23.     Defendants have failed to make any payments on the remaining balance since September 23, 2010.

24.     Therefore, a principal balance of $521,800 remains due and owing.

25.     Interest also continues to accrue at 20 percent per annum on the unpaid principal balance.

<u>**COUNT ONE**</u>

**BREACH OF CONTRACT (Loan Agreement)**

26.     Qderopateo, QBVI, and QHK have failed to make the necessary payments under the Loan Agreement.

27.     The failure to meet these obligations under the Loan Agreement constitutes a breach of contract.

28.     As a result of this breach, Saleh has been damaged in the amount of $521,800, plus applicable interest.

3

6864134.1 36126/141614
6864134.1 36126/141614

29.     Saleh also has had to retain counsel to pursue his rights under the Loan Agreement. As such, Saleh is entitled to an award of his costs and reasonable attorney's fees pursuant to the Loan Agreement.

<div align="center">

**COUNT TWO**

**BREACH OF CONTRACT (Personal Guarantee)**

</div>

30.     The Guarantors have failed to make the necessary payments under the Personal Guarantee.

31.     Guarantors' failure to meet their obligations under the Personal Guarantee constitutes a breach of contract.

32.     As a result of this breach, Saleh has been damaged in the amount of $521,800, plus applicable interest.

33.     Saleh also has had to retain counsel to pursue his rights under the Personal Guarantee. As such, Saleh is entitled to an award of his costs and reasonable attorney's fees pursuant to the Personal Guarantee.

WHEREFORE, Plaintiff Paul Saleh prays for judgment as follows:

   a.   Against Qderopateo, QBVI, and QHK in the principal amount of $521,800.00 for breach of the Loan Agreement, plus twenty percent (20%) interest per annum pursuant to the Loan Agreement accruing from September 23, 2010;

   b.   Against the Guarantors, jointly and severally, in the principal amount of $521,800.00 for breach of the Personal Guarantee, plus twenty percent (20%) interest per annum pursuant to the Loan Agreement accruing from September 23, 2010;

   c.   Against all Defendants for Saleh's costs and reasonable attorney's fees pursuant to the Loan Agreement and Personal Guarantee;

6864134.1 36126/141614
6864134.1 36126/141614

d. For other or further relief as the Court may deem just and proper in the circumstances.

Dated: Detroit, Michigan  
January 20, 2010

CLARK HILL PLC  
COUNSEL FOR PLAINTIFF PAUL SALEH

By:     s/Brian M. Ziff  
            per Charles E. Schmidt as authorized  
Brian M. Ziff  
Steven C. Lawrence  
14850 N. Scottsdale Road, Suite 500  
Scottsdale, Arizona 85254  
Telephone: (480) 684-1105  
Facsimile: (480) 684-1165  
– and –

Dated: New York,. N.Y.  
January 20, 2010

KENNEDY LILLIS SCHMIDT & ENGLISH  
COUNSEL FOR PLAINTIFF PAUL SALEH

By:     s/Charles E. Schmidt  
Charles E. Schmidt  
75 Maiden Lane – Suite 402  
New York, New York 10038-4816  
Telephone: (212) 430-0800  
Facsimile: (212) 430-0810

5

C:\DOCUMENTS AND SETTINGS\CSCHMIDT\DESKTOP\SALEH_TAGS.DOC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL SALEH, | |
| Plaintiff, | |
| v. | Case No. 11 CV 0438 (PKC) (DF) |
| QDEROPATEO LLC, QDERO LIMITED (BVI), QDERO LIMITED HONG KONG, ALBERT FRANCESCO, CHRISTOPHER BUFFALINO, ANDREW M. GAINES II, | |
| Defendants. | |

# Exhibit A

# LOAN AGREEMENT

THIS LOAN AGREEMENT, made this 7th day of July, 2010, by and between
QDEROPATEO LLC, and its 100% owned subsidiaries Qdero Limited (BVI), and Qdero
Limited Hong Kong, having an address at 500 FIFTH AVENUE, 41ST FLOOR NEW YORK,
NY 10110("Borrower") and PAUL SALEH("Lender"), having an address at

_____

WHEREAS, Borrower wishes to borrow certain monies from Lender, and Lender wishes to lend certain
monies to Borrower, in order for Borrower to meet certain financial obligations with respect to
Borrower's business development.

NOW, THEREFORE, in consideration of the mutual covenants and promises
herein, all of which are deemed sufficient, it is hereby agreed to as follows:

1. Immediately upon the full execution hereof, Lender shall lend to
Borrower the amount of Five Hundred Ninety Six Thousand Dollars ($596,000.00)
(the "Loan"). The Loan shall be funded by wire transfer.

2. The interest rate on the outstanding and unpaid principal amount of the Loan shall be twenty
percent (20%) as calculated on an annual basis assuming a 365 day year and is payable on a monthly
basis. Interest shall be paid on the first day following the end of each month (on the previous Friday if
the first of the month falls on a non-business day in the United States). If the interest payment is not
made on the specified day, the accrued interest will be capitalized and added to the principal balance of
the loan each month until the principal balance is repaid in full. In the event of default, any unpaid
interest will be capitalized and added to the principal balance until the loan is repaid.

3. The term of the Loan shall begin at the Execution date on this Contract and conclude on September
10, 2010 (the "Term").

4. The Borrower shall make payments of principal and interest to the
address of the Lender noted above. The entire outstanding and unpaid principal amount of the Loan,
together with any interest thereon, shall be due and payable at the end of this Term.

5. Borrower may prepay the Loan without premium at any time during the Term. However, if the
borrower repays the loan before the term date, the amount of interest that would have been accrued for
the entire loan period will be due and owing at that time.

6. Certain Company executives have offered a personal guaranty on this loan. Please see that separate
agreement for its referenced terms and conditions.

7. Borrower further agrees to pay all costs, interest, and reasonable attorney's fees incurred by
Lender in collecting any amounts hereby.

If this is your understanding of the agreement between us, please so
indicate your acceptance of the terms and conditions hereof by signing in the
place indicated below and returning all copies of this agreement for
countersignature. One fully executed copy of the agreement will be sent to you for your files.

Very truly yours,

QDEROPATEO LLC.

By

Name: Andrew M. Gaines
     Management Committee Member

ACCEPTED AND AGREED:

By:
-----------------------
Name: Paul Saleh

C:\DOCUMENTS AND SETTINGS\CSCHMIDT\DESKTOP\SALEH_TAGS.DOC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL SALEH, | |
| Plaintiff, | |
| v. | Case No.  11 CV 0438 (PKC) (DF) |
| QDEROPATEO LLC, QDERO LIMITED (BVI), QDERO LIMITED HONG KONG, ALBERT FRANCESCO, CHRISTOPHER BUFFALINO,   ANDREW M. GAINES II, | |
| Defendants. | |

# Exhibit B

# PERSONAL GUARANTEE

This Personal Guarantee is entered into by and between Paul Saleh, the ("Obligee") an individual residing in the state of Virgina, and the undersigned (hereinafter "Guarantors"), and is to be effective upon complete execution of the signature blocks provided below (hereinafter the "Effective Date").

The undersigned, jointly and severally, do hereby guarantee and agree to pay $596,000 in principal to the Obligee with respect to the Loan Agreement between the Obligee and Qderopare LLC dated the _____ day of July, 2010. It is also understood that interest shall be paid on the first day following the end of each month (on the previous Friday if the first of the month falls on a non-business day in the United States). If interest payment is not made on specified day, the accrued interest will be capitalized and added to the principal balance of the loan until the indebtedness is repaid in full. In the event of default, any unpaid interest will be capitalized and added to the principal balance until the loan is repaid. Thus, any outstanding interest will be paid under this Guaranty as well. This Guarantee shall be an unconditional and irrevocable guarantee to repay and indemnify such indebtedness. Guarantor hereby agrees that all rights, remedies, and recourses afforded to Obligee by reason of this Guarantee or otherwise are separate and cumulative and may be pursued separately, successively, or concurrently, as occasion therefore shall arise, and are nonexclusive and shall in no way limit or prejudice any other legal or equitable right, remedy, or recourse which Obligee may have. Guarantor hereby waives notice of default, nonpayment, and notice thereof and consents to any modification or renewal of the credit agreement hereby guaranteed. This Guarantee may be assigned by Obligee to any person or entity taking assignment of the underlying debt, without notice to Guarantor, and shall be fully enforceable by said assignee. Guarantor further agrees to pay all costs, interest, and reasonable attorney's fees incurred by Obligee in collecting any amounts hereby guaranteed, whether from Company or Guarantor.

In the event that any provision in the Guarantee shall be construed by a court of competent jurisdiction to be unlawful or unenforceable and if the offending provision can be reformed to effect the clear intention of the parties herein, then, the offending provision shall be so reformed, and the remainder of the Guarantee shall remain in full force and effect as written. If the provision cannot be reformed to affect the clear intention of the parties hereto, then, this Guarantee shall be deemed to be reformed to exist as now written but without the offending provision.

I hereby agree to bind myself to pay you promptly on demand, without offset, credit or deduction of any kind, any sum which may become due to you by Company, a bankruptcy trustee, a creditor of the Company or any other person as a return of a preferential payment made to you by the Company pursuant to bankruptcy or insolvency laws.

Executed at this ___7th___ day of July, 2010

FIRST GUARANTOR
Signature _Albert Fr_____
Print Name: ALBERT FRANCESCO
Address: 5402 Central Ave.
ABERDEEN, NJ 07747

SECOND GUARANTOR
Signature _Christopher Buffalino_
Print Name: Christopher Buffalino
Address: 439 Whitebrick RD HAMPStead
NC 28443

THIRD GUARANTOR _Andrew M Gaines_
ANDREW M GAINES II
616 Gibbs C.T.
WILMINGTON NC 28405

UNITED STATES DISTRICT COURT Document 1    Filed 01/20/11   Page 11 of 11
SOUTHERN DISTRICT OF NEW YORK

PAUL SALEH,

                              Plaintiff,

    - against -                                                   11 CIV 0438 (PKC) (DF)
QDEROPATEO LLC, *et al.*

                              Defendants.

COMPLAINT

*Kennedy Lillis Schmidt & English*

Attorneys for
                              PLAINTIFF

*75 Maiden Lane*
*New York, N.Y. 10038-4816*
*Telephone: 212-430-0800*

*Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.*

*Dated:*...................................        Signature ...................................................

                                                 Print Signer's Name.........................................

*Service of a copy of the within*                                    *is hereby admitted.*

*Dated:*
                                                 ...................................................
                                                 *Attorney(s) for*

**PLEASE TAKE NOTICE**

☐          *that the within is a (certified) true copy of a*
NOTICE OF    *entered in the office of the clerk of the within-named Court on*                    20
ENTRY

☐          *that an Order of which the within is a true copy will be presented for settlement to the*
NOTICE OF    *Hon.*                                  *, one of the judges of the within-named Court,*
SETTLEMENT    *at*
             *on*                    20        *, at*                  *M.*

*Dated:*

                              *Kennedy Lillis Schmidt & English*
                    Attorneys for
                                        PLAINTIFF

                              *75 Maiden Lane*
                              *New York, N.Y. 10038-4816*

*To:*

*Attorney(s) for*

# EXHIBIT C

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------

PAUL SALEH,                         :
                                  :

     Plaintiff,                 :
                                  :

v.                             :
                                  :        11 Civ. 0438 (PKC) (DF)

ALBERT FRANCESCO, CHRISTOPHER   :
BUFFALINO, ANDREW M. GAINES II,   :
     Defendants                 :
-----------------------------------------------------------------x

Defendants Answers Plaintiff's Amended Complaint for Damages as follows:

Under provisions of the Federal Code of Civil Procedure, Defendants generally deny all of the allegations in the Complaint for Damages, and each cause of action thereof, and further generally denies that Plaintiff sustained damages alleged, or at all.

## ANSWER

### PRELIMINARY STATEMENT

1.  Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, deny same.

2.  Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, deny same.

3.  Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, deny same.

4.  Denied.

### PARTIES AND JURISDICTION

5.  Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, deny same.

6.  Admitted.

7.  Admitted.

8.  Admitted.

9.  Admitted.

10.  Admitted.

11.  Defendants admit that this Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332(a), but denies that any of Plaintiff's claims asserted against Defendants are meritorious. Defendants deny the remaining allegations of this paragraph.

12.  Admitted.

**FACTS RELEVANT TO ALL CLAIMS**

13.  Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

14.  Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

15.  Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

16.  Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

17.  Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

18.  Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

19.  Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

20.   Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

21.   Defendants admit that a wire transfer of $100,000 was sent to Plaintiff on September 23, 2010, but denies that any of Plaintiff's claims asserted against Defendants are meritorious.  Defendants deny the remaining allegations of this paragraph.

22.   Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

23.   Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

24.   Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

25.   Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

## COUNT ONE

## BREACH OF CONTRACT (LOAN AGREEMENT)

26.   Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

27.   Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

28.   Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

29.   Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

## COUNT TWO

### BREACH OF CONTRACT (PERSONAL GURANTEE)

30. Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

31. Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

32. Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

33. Defendants are without information sufficient to admit or deny the allegations of this paragraph and, accordingly, denies same.

### RELIEF REQUESTED

Defendants deny that Plaintiff is entitled to judgment in its favor, or to any other relief whatsoever.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

1. Defendants did not sign personal guarantee.

### SECOND AFFIRMATIVE DEFENSE

2. Plaintiff failed to state a claim for which relief may be provided.

### THIRD AFFIRMATIVE DEFENSE

3. Plaintiff failed to mitigate its damages, if any.

### FOURTH AFFIRMATIVE DEFENSE

4. If Plaintiff was damaged, either as alleged in the Complaint or at all, such damages were directly and proximately caused by Plaintiff's negligence and Plaintiff's recovery, if any, should be reduced in proportion to their comparative fault.

**FIFTH AFFIRMATIVE DEFENSE**

5.    If Plaintiff was damaged, either as alleged in the Complaint or at all, such damages were directly and proximately caused by the comparative fault of others, whether or not parties to this action, and Plaintiff's recovery if any, should be reduced in proportion to their comparative fault of those parties.

**SIXTH AFFIRMATIVE DEFENSE**

6.    If Plaintiff was damaged, either as alleged in the Complaint or at all, such damages were caused by the unforeseeable criminal actions of third parties of which Defendants had no control.

**SEVENTH AFFIRMATIVE DEFENSE**

7.    Plaintiff, by its own acts or conduct, is estopped from asserting any claims or damages or seeking any other relief whatsoever against Defendants.

**EIGHTH AFFIRMATIVE DEFENSE**

8.    Plaintiff, by its own acts or conduct, has waived and/or released all claims, if any, against Defendants.

**NINTH AFFIRMATIVE DEFENSE**

9.    Plaintiff's claims are barred by the doctrines of latches, estoppel, and/or waiver, to the extent shown by further discovery.

**TENTH AFFIRMATIVE DEFENSE**

10.   Defendants give notice that they intend to rely on other defensed that become available during the discovery proceedings in this case and reserve the right to amend its answer to assert any such defense.

**ELEVENTH AFFIRMATIVE DEFENSE**

11.   Plaintiff failed to complete Loan documentation process by not signing loan document and notifying Defendants of the consummation of the loan.

## TWELFTH AFFIRMATIVE DEFENSE

11. Defendants did not have possession of funds at any time.


## COUNTERCLAIMS

1. Plaintiff engaged with those whom he wired money to obtain equity in Company in exchange for money wired.

2. Plaintiff caused material damage to Company as a result of plaintiff's actions.

3. Plaintiffs actions, in conjunction with Qdero Limited (BVI), caused Plaintiff, owners of Qdero Limited (BVI) and other third party members to begin a competing company named QPC, Ltd. (Caymans) that attempted to utilize Intellectual Property owned by Qderopateo LLC, a defendant in the Plaintiff's original case, for its own gain.

4. Plaintiff attempted to receive equity in QPC, Ltd. and caused irreparable damage to Qderopateo LLC and Defendants.

5. As a result of Plaintiff's involvement in facilitating the transaction with the above named members and third party solicitors, and the establishment of a company that attempted to utilize the intellectual property and other relationships of Qderopateo LLC, thereby nullifying a deal with a reputable purchaser, Defendants seek compensation from Plaintiff in the sum of $10,500,000.


## CROSS CLAIMS

1. Whereas, Plaintiff lent money to Qdero Limited Hong Kong via direct wire transfer from the Plaintiff's account, Defendants seek the return of the money from Qdero Limited Hong Kong, to the Plaintiff.

## **THIRD PARTY CLAIMS**

1. Whereas, on information and belief, Qdero Limited (BVI)and Qdero Limited Hong Kong., Defendants in the original complaint made by Plaintiff, are owned by Mr. Steve Yi Long Chao, a United States citizen living in Shanghai, China on a Visa granted by the United States Government. Defendant seeks to serve Complaint on Mr. Chao as per its rights under Rule 14 of the Federal Rules of Civil Procedure.

2. Whereas, on information and belief, Mr. Chao claims to have wired funds to Mr. Henry Yau, also a United States citizen believed to be living in Shanghai, China on a Visa from the United States Government. Defendant seeks to serve Complaint on Mr. Yau as per its rights under Rule 14 of the Federal Rules of Civil Procedure.

3. Defendant wishes to have parties settle this complaint, which is by and among the Plaintiff and the Third Party claimants.

4. Defendant seeks remuneration of $596,000, plus interest, from Mr. Chao and Mr. Yau, collectively.


## **DEFENDANTS' PRAYER FOR RELIEF**

WHEREFORE, DEFENDANT respectfully prays that the Court grant the following relief:

A. Entry of judgment in DEFENDANTS' favor on each and every count of Plaintiff's Complaint;

B. Entry of an order directing that DEFENDANTS ' are not liable to Plaintiff for any damages pursuant to Plaintiff's Complaint;

# EXHIBIT D

Case 12-1939 Document 52 12/11/2012 802291 Page74 of 92
Case 1:11-cv-00438-PKC -DCF Document 32 Filed 12/05/11 Page 38 of 55
Case 1:11-cv-00438-PKC Document 5 Filed 02/07/11 Page 1 of 10

CLARK HILL PLC
Brian M. Ziff and Steven C. Lawrence
14850 N. Scottsdale Rd. – Suite 500
Scottsdale, Arizona 85254
Telephone: (480) 684-1105
Telecopier: (480) 684-1165
Attorneys for Plaintiff

KENNEDY LILLIS SCHMIDT & ENGLISH
Charles E. Schmidt
75 Maiden Lane – Suite 402
New York, N.Y. 10038-4816
Telephone: 212-430-0800
Telecopier: 212-430-0810

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

|  |  |  |
|---|---|---|
| PAUL SALEH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| - v. - | ) | 11 CIV 0438 (PKC) (DF) |
| | ) | |
| ALBERT FRANCESCO, | ) | FIRST AMENDED COMPLAINT |
| CHRISTOPHER BUFFALINO and | ) | |
| ANDREW M. GAINES II, | ) | |
| | ) | |
| Defendants. | ) | |

_____

Plaintiff Paul Saleh ("Saleh"), for his Complaint against Defendants Albert Francesco ("Francesco"), Christopher Buffalino ("Buffalino") and Andrew M. Gaines II ("Gaines") hereby alleges upon information and belief as follows:

## PRELIMINARY STATEMENT

1.     This action arises out of the breach of a promissory note by borrower Qderopateo LLC ("Qderopateo"), and subsequent breaches of related personal guarantees of that loan by Francesco, Buffalino, and Gaines (collectively the "Guarantors"), each of whom is a member of Qderopateo.

2.     Via a "Loan Agreement" (copy attached hereto as Exhibit A), Saleh agreed to lend and did lend the sum of $596,000 to Qderopateo.

3.     This loan was personally guaranteed by Francesco, Buffalino, and Gaines via a "Personal Guarantee" (copy attached hereto as Exhibit B).

Case 12-1939, Document 52, 12/11/2012, 802291, Page75 of 92
Case 1:11-cv-00438-PKC -DCF Document 32 Filed 12/05/11 Page 39 of 55
Case 1:11-cv-00438-PKC Document 5 Filed 02/07/11 Page 2 of 10

4.      Despite demand, Defendants have failed to meet their payment obligations under the Personal Guarantee.  Plaintiff therefore seeks to recover all amounts due under the Personal Guarantee.

## PARTIES AND JURISDICTION

5.      Saleh is a resident of the State of Virginia.

6.      Qderopateo is a limited liability company organized under New York law and authorized to conduct business in the State of New York.

7.      Guarantors Gaines and Buffalino are members in Qderopateo and are citizens and residents of the State of North Carolina.

8.      Guarantor Francesco is a member in Qderopateo and a citizen and resident of the State of New Jersey.

9.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) as there is complete diversity among the parties and the amount in controversy exceeds $75,000.00, exclusive of interest, fees, and costs.

10.     Jurisdiction is proper over the Defendants because each of them has purposely availed themselves of the privileges of conducting business in New York by, among other things, conducting business through Qderopateo, a New York limited liability company, and by guaranteeing Qderopateo's obligations such that Saleh was willing to provide the funds to Qderopateo.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a) because the funds loaned by Saleh were intended for the benefit of Qderopateo, and because the Loan Agreement and Personal Guarantee were negotiated and executed in part in New York.

## FACTS RELEVANT TO ALL CLAIMS

12.     On July 7, 2010, Saleh and Qderopateo entered into a Loan Agreement whereby Saleh lent the principal sum of $596,000.00 to Qderopateo.

13.     Pursuant to the Loan Agreement, interest on the loan amount is computed at twenty percent (20%) annually and is payable on a monthly basis.

2

6864134.1 36126/141614
6888760.2 36126/141614

14.     The term of the loan was from the execution date of the Loan Agreement through September 10, 2010.

15.     The entire unpaid balance of the loan as of September 10, 2010, was due and payable as of that date per the Loan Agreement.

16.     Qderopateo further agreed to pay all costs, interest, and reasonable attorney's fees incurred by Saleh in collecting any amounts due under the Loan Agreement.

17.     On July 7, 2010, the Guarantors each executed a Personal Guarantee under which each agreed, unconditionally and irrevocably, to be jointly and severally liable for the full amount of the loan made to Qderopateo.  These guarantees were specifically referenced in the Loan Agreement.

18.     In the Personal Guarantee, the Guarantors each waived the defenses of default, nonpayment, and notice thereof, and consented to any modification or renewal of the Loan Agreement.

19.     Guarantors further agreed to pay all costs, interest, and reasonable attorney's fees incurred by Saleh in collecting any amounts due under the Personal Guarantee.

20.     Saleh received a wire transfer of $100,000.00 on September 23, 2010, after the full balance of the Loan had become due and payable.

21.     This $100,000 payment was applied to accrued interest at that time (79 days of interest at 20 percent per annum, or $25,800), with the remainder applied to principal.

22.     Defendants have failed to make any payments on the remaining balance since September 23, 2010.

23.     Therefore, a principal balance of $521,800 remains due and owing.

24.     Interest also continues to accrue at 20 percent per annum on the unpaid principal balance.

25.     Demand has been made on Guarantors, but said demand has gone unsatisfied.

6864134.1 36126/141614
6888760.2 36126/141614

## COUNT ONE

### BREACH OF CONTRACT (Personal Guarantee)

26.     The Guarantors have failed to make the necessary payments under the Personal Guarantee.

27.     Guarantors' failure to meet their obligations under the Personal Guarantee constitutes a breach of contract.

28.     As a result of this breach, Saleh has been damaged in the amount of $521,800, plus applicable interest.

29.     Saleh also has had to retain counsel to pursue his rights under the Personal Guarantee.  As such, Saleh is entitled to an award of his costs and reasonable attorney's fees pursuant to the Personal Guarantee.

WHEREFORE, Plaintiff Paul Saleh prays for judgment as follows:

a.  Against Defendants, jointly and severally, in the principal amount of $521,800.00 for breach of the Personal Guarantee, plus twenty percent (20%) interest per annum pursuant to the Loan Agreement accruing from September 23, 2010;

b.  Against Defendants for Saleh's costs and reasonable attorney's fees pursuant to the Loan Agreement and Personal Guarantee;

c.  For other or further relief as the Court may deem just and proper in the circumstances.

Dated: Phoenix, Arizona
      February 7, 2011

CLARK HILL PLC
COUNSEL FOR PLAINTIFF PAUL SALEH


By: s/Brian M. Ziff, as authorized, by Charles E. Schmidt
     Brian M. Ziff
     Steven C. Lawrence
     14850 N. Scottsdale Road, Suite 500
     Scottsdale, Arizona 85254
     Telephone:  (480) 684-1105
     Facsimile:  (480) 684-1165
             – and –

6864134.1 36126/141614
6888760.2 36126/141614

Dated: New York, N.Y.
February 7, 2011

KENNEDY LILLIS SCHMIDT & ENGLISH
COUNSEL FOR PLAINTIFF PAUL SALEH


By:      s/ Charles E. Schmidt
           Charles E. Schmidt
           75 Maiden Lane – Suite 402
           New York, New York 10038-4816
           Telephone: (212) 430-0800
           Facsimile: (212) 430-0810

6864134.1 36126/141614
6888760.2 36126/141614

C:\DOCUMENTS AND SETTINGS\CSCHMIDT\DESKTOP\SALEH_TAGS.DOC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL SALEH, | |
| Plaintiff, | |
| v. | Case No.  11 CV 0438 (PKC) (DF) |
| QDEROPATEO LLC, QDERO LIMITED (BVI),<br>QDERO LIMITED HONG KONG,<br>ALBERT FRANCESCO, CHRISTOPHER<br>BUFFALINO,        ANDREW M. GAINES II, | |
| Defendants. | |

# Exhibit A

Case 12-1939, Document 53, 12/11/2012, 802291, Page80 of 92
Case 1:11-cv-00438-PKC -DCF Document 32 Filed 12/05/11 Page 44 of 55
Case 1:11-cv-00438-PKC Document 5 Filed 02/07/11 Page 7 of 10

# LOAN AGREEMENT

THIS LOAN AGREEMENT, made this 7th day of July, 2010, by and between
QDEROPATEO LLC, and its 100% owned subsidiaries Qdero Limited (BVI), and Qdero
Limited Hong Kong, having an address at 500 FIFTH AVENUE, 41ST FLOOR NEW YORK,
NY 10110("Borrower") and PAUL SALEH("Lender"), having an address at

WHEREAS, Borrower wishes to borrow certain monies from Lender, and Lender wishes to lend certain
monies to Borrower, in order for Borrower to meet certain financial obligations with respect to
Borrower's business development.

NOW, THEREFORE, in consideration of the mutual covenants and promises
herein, all of which are deemed sufficient, it is hereby agreed to as follows:

1. Immediately upon the full execution hereof, Lender shall lend to
Borrower the amount of Five Hundred Ninety Six Thousand Dollars ($596,000.00)
(the "Loan"). The Loan shall be funded by wire transfer.

2. The interest rate on the outstanding and unpaid principal amount of the Loan shall be twenty
percent (20%) as calculated on an annual basis assuming a 365 day year and is payable on a monthly
basis. Interest shall be paid on the first day following the end of each month (on the previous Friday if
the first of the month falls on a non-business day in the United States). If the interest payment is not
made on the specified day, the accrued interest will be capitalized and added to the principal balance of
the loan each month until the principal balance is repaid in full. In the event of default, any unpaid
interest will be capitalized and added to the principal balance until the loan is repaid.

3. The term of the Loan shall begin at the Execution date on this Contract and conclude on September
10, 2010 (the "Term").

4. The Borrower shall make payments of principal and interest to the
address of the Lender noted above. The entire outstanding and unpaid principal amount of the Loan,
together with any interest thereon, shall be due and payable at the end of this Term.

5. Borrower may prepay the Loan without premium at any time during the Term. However, if the
borrower repays the loan before the term date, the amount of interest that would have been accrued for
the entire loan period will be due and owing at that time.

6. Certain Company executives have offered a personal guaranty on this loan. Please see that separate
agreement for its referenced terms and conditions.

7. Borrower further agrees to pay all costs, interest, and reasonable attorney's fees incurred by
Lender in collecting any amounts hereby.

If this is your understanding of the agreement between us, please so
indicate your acceptance of the terms and conditions hereof by signing in the
place indicated below and returning all copies of this agreement for
countersignature. One fully executed copy of the agreement will be sent to you for your files.

Very truly yours,

QDEROPATEO LLC.

By

Name: Andrew M. Gaines
      Management Committee Member

ACCEPTED AND AGREED:

By:
    ----------------------
Name: Paul Saleh

C:\DOCUMENTS AND SETTINGS\CSCHMIDT\DESKTOP\SALEH_TAGS.DOC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PAUL SALEH, | |
| Plaintiff, | |
| v. | Case No. 11 CV 0438 (PKC) (DF) |
| QDEROPATEO LLC, QDERO LIMITED (BVI), QDERO LIMITED HONG KONG, ALBERT FRANCESCO, CHRISTOPHER BUFFALINO, ANDREW M. GAINES II, | |
| Defendants. | |

# Exhibit B

Case 12-1939 Document 52 12/11/2012 802291 Page83 of 92
Case 1:11-cv-00438-PKC -DCF   Document 32   Filed 12/05/11   Page 47 of 55
Case 1:11-cv-00438-PKC   Document 5   Filed 02/07/11   Page 10 of 10

Jul 07 10 04:56p                                                                                          p.1

# PERSONAL GUARANTEE

This Personal Guarantee is entered into by and between Paul Saleh, the ("Obligee") an individual residing in the state of Virgina, and the undersigned (hereinafter "Guarantors"), and is to be effective upon complete execution of the signature blocks provided below (hereinafter the "Effective Date").

The undersigned, jointly and severally, do hereby guarantee and agree to pay $596,000 in principal to the Obligee with respect to the Loan Agreement between the Obligee and Qderopate LLC dated the _____ day of July, 2010. It is also understood that interest shall be paid on the first day following the end of each month (on the previous Friday if the first of the month falls on a non-business day in the United States). If interest payment is not made on specified day, the accrued interest will be capitalized and added to the principal balance of the loan until the principal balance is repaid in full. In the event of default, any unpaid interest will be capitalized and added to the principal balance until the loan is repaid. Thus, any outstanding interest will be paid under this Guaranty as well. This Guarantee shall be an unconditional and irrevocable guarantee to repay and indemnify such indebtedness. Guarantor hereby agrees that all rights, remedies, and recourses afforded to Obligee by reason of this Guarantee or otherwise are separate and cumulative and may be pursued separately, successively, or concurrently, as occasion therefore shall arise, and are nonexclusive and shall in no way limit or prejudice any other legal or equitable right, remedy, or recourse which Obligee may have. Guarantor hereby waives notice of default, nonpayment, and notice thereof and consents to any modification or renewal of the credit agreement hereby guaranteed. This Guarantee may be assigned by Obligee to any person or entity taking assignment of the underlying debt, without notice to Guarantor, and shall be fully enforceable by said assignee. Guarantor further agrees to pay all costs, interest, and reasonable attorney's fees incurred by Obligee in collecting any amounts hereby guaranteed, whether from Company or Guarantor.

In the event that any provision in the Guarantee shall be construed by a court of competent jurisdiction to be unlawful or unenforceable and if the offending provision can be reformed to effect the clear intention of the parties herein, then, the offending provision shall be so reformed, and the remainder of the Guarantee shall remain in full force and effect as written. If the provision cannot be reformed to affect the clear intention of the parties hereto, then, this Guarantee shall be deemed to be reformed to exist as now written but without the offending provision.

I hereby agree to bind myself to pay you promptly on demand, without offset, credit or deduction of any kind, any sum which may become due to you by Company, a bankruptcy trustee, a creditor of the Company or any other person as a return of a preferential payment made to you by the Company pursuant to bankruptcy or insolvency laws.

Executed at this __7th__ day of July, 2010

FIRST GUARANTOR
Signature _Albert F_____
Print Name: ALBERT FRANCESCO
Address: 5402 Central AvE.
         ABERDEEN, NJ 07747


SECOND GUARANTOR
Signature _Christopher Buffalino_
Print Name: Christopher Buffalino
Address: 439 whitebrick rd Hampstead
         NC 28443

THIRD GUARANTOR M/Grimnett
         ANDREW M GRIMES II
         616 Greens C.T
         WILMINGTON NC 28405

# EXHIBIT E

About     Our Team     Investments     Services     News     Contact

Broadband     Mobile Media     Online Applications     Ambient Intelligence



## Advisory Team

Dougherty, Jr.

ɔn

### Paul Saleh

Mr. Saleh brings a broad financial and operational management experience in the media and telecomm industries. He has a proven record of leading large organizations in demanding, fast-paced environments. In late 2007, Mr. Saleh served as interim CEO of Sprint Nextel, a Fortune 50 leading Wireless and Telecom company with $40 Billion in revenues and over 50 Million subscribers and as CFO of Sprint Nextel from 2005 to 2008.



Prior to that, Mr. Saleh served as the CFO of Nextel from 2001 to 2005. From 1997 to 2001, Mr. Saleh was senior vice president and chief financial officer at Walt Disney International. Prior to Disney, he served as treasurer of Honeywell where he spent 12 years in various leadership positions in finance, treasury, investor relations, strategic planning and operations. Institutional Investor Magazine named Mr. Saleh as the best CFO in the telecom services/wireless sector in 2004, 2005, 2006 and 2007.

He also was recognized in June 2005 by Treasury & Risk Management as one of the 100 Most Influential People in Finance. Mr. Saleh earned a Master of Business Administration with distinction in finance, a Master of Science in electrical engineering and a Bachelor of Science in electrical engineering, all from the University of Michigan.

### Thomas J. Dougherty, Jr.

#### *Financial And Transactional Structuring*

Thomas J. Dougherty, Jr. represents cable companies, broadband Internet access providers, mobile carriers, satellite systems, LMDS providers and broadcasters before the Federal Communications Commission, State PUCs, cable franchising authorities and the Federal courts. Mr. Dougherty's transactional work spans the gamut from business sales through asset and tax-deferred stock transactions to spectrum leasing and outsourcing. A major focus of Mr. Dougherty's practice is transactions in communications properties and spectrum, including Secondary Market transactions in wireless spectrum, and outsourcing. His list of more recent deals includes:



- The representation of AT&T in a number of transactions involving the acquisition or disposition of spectrum and other telecommunications assets, including its recent $2.5 billion purchase of 700MHz spectrum from Aloha Partners and its exchange of wireless markets and other assets with Verizon Wireless
- The representation of AT&T in a large outsourcing transaction by which a Fortune 100 company acquired various communications services.
- The representation of cable companies in retransmission consent negotiations with television broadcasters.

**Back To Top**

### Mark Allen

#### *Marketing and Brand Management*

Mr. Allen brings 20 years of experience and knowledge in wireless telecommunications and technology companies including senior leadership with four start-up ventures. His career has focused on introducing new technologies, creating new brands and product positioning targeting both consumers and businesses.

Most recently, Mr. Allen served as VP, Marketing - Customer Acquisition and Strategy for

**What's New**

**Broadband Stimulus**
AOC-XGEN's first step to bring broadband service to the under-serv areas of our nation was made by submitting an application for the Broadband Technology Opportunitie Program (BTOP). Under the BTOP program, $4.7 billion of stimulus mor being provided to support the deploy of broadband infrastructure.

**Augmented Reality**
Menza Partners is engaged in augm reality, a technology that blends virtu generated and real-world data togeth Users are able to interact in real time that digitally processed data can be superimposed onto live imagery - thu creating a modified picture of the rea world.



About     Our Team     Investments     Services     News     Contact

Broadband     Mobile Media     Online Applications     Ambient Intelligence

## Current Investments

### Wimax Technology



Together, AOC and XGEN represent industry leaders in the wireless and terrestrial communications, and in the Government contracts and grants arena. Representing a combined technology and Government contracting experience of over 45 years, AOC-XGEN Wireless, LLC is positioned to lead the industry in providing broadband access to under-served areas nationwide.

### Ambient Intelligence



Visionary Duo Aims to Bring Articulated Naturality into Mainstream Culture Young Entrepreneurs Forge 21st Century Partnership from Half a World Away; New Natural Urban Feature Tracking and Image Mapping Technology Marries Virtual and Real-World Environments for More 'Natural' Augmented Reality Experience.

In the midst of the frenetic chaos that is New York City's Times Square, an overwhelmed tourist stands astonished by the incredible pace, the mass of humanity, the wonderment of light and sound. Seeking a cozy bistro and comfortable accommodations, he considers asking a passerby for a recommendation, but stops short, wishing instead that he had sought the input of his local travel agent for a personal recommendation.

In the world envisioned by Steve Chao and Matt Gaines, this tentative traveler would need only lift his mobile phone into his field of view to reveal a plethora of information about nearby dining and hotel options - complete with menus, prices, discounts and peer reviews - instantly transforming the bustling landscape into a user-friendly interactive environment. Had she been there before him, his local agent may even appear as a 3D avatar to provide an on-the-spot personal recommendation to help guide his choice.



This is the world of QderoPateo (Latin for great hope soon to be revealed) - Articulated

### What's New

#### Broadband Stimulus

AOC-XGEN's first step to bring broadband service to the under-serv areas of our nation was made by submitting an application for the Broadband Technology Opportunitie Program (BTOP). Under the BTOP program, $4.7 billion of stimulus mor being provided to support the deploy of broadband infrastructure.

#### Augmented Reality

Menza Partners is engaged in augm reality, a technology that blends virtu generated and real-world data togeth Users are able to interact in real time that digitally processed data can be superimposed onto live imagery - thu creating a modified picture of the rea world.



**Broadband          Mobile Media          Online Applications          Ambient Intelligence**

## News | Featured Articles

### Articulated naturality makes ready for its debut

*http://news.thewherebusiness.com/content/articulated-naturality-makes-ready-its-debut*

*The Where Business*



How do you introduce "articulated naturality", a term most people have never heard, and make it commercially viable in the mobile market? One way is to launch to a market that doesn't exist yet because the technology is so new, writes Christopher Backeberg...

QderoPateo, an American-Chinese start-up, has prepared its strategy for just such an intro to the mobile world. It will pave the way with an introductory mobile app, largely to show people what articulated naturality is all about. Then it will launch its novel technology and a brand-new type of mobile device at one of the world's biggest trade fairs.

Read the full article **here**

### Startup firm has ambitious augmented reality plans

*RCR Wireless News*



Augmented reality is the ethereal name given to the newest range of mobile content applications. But once you get past the description, the application which fuses relevant digital information with the real-world environment is fairly concrete. In fact, the best example of augmented reality may be beer-maker Stella Artois' iPhone application, which overlays a list of bars in the area with physical maps so people can scout out nearby bars and read reviews about the establishments.

While augmented reality apps are still nascent, QderoPateo, a startup company from a guy in China and a guy in the U.S., want to take the application to its next level that of Articulated Naturality, which relies on full image recognition of one's environment and location-based services for an augmented reality solution.

Read the full article **here**

### Paul Saleh Leads Menza Partners as it Expands its Reach Into Disruptive Technologies

*Yahoo Finance*



Company Focused on Bringing Next-Generation Broadband Solutions to Mid-Tier and Under-Served Markets; Expects Significant Opportunities in "Articulated Naturality" as the Digital and Real World Converge

Menza Partners, an operational and financial advisory group focusing on media, telecommunications, and technology industries, is expanding its reach into emerging technologies that range from broadband infrastructure, mobile media and ambient intelligence. Telecommunications and media industry veteran Paul Saleh, who previously served as acting CEO of Sprint/Nextel, is leading the company.

Read the full article **here**

### Paul Saleh To Introduce QderoPateo's Ouldoo Device At "Above The Clouds" At Shanghai World Expo

## What's New

**Broadband Stimulus**

AOC-XGEN's first step to bring broadband service to the under-serv areas of our nation was made by submitting an application for the Broadband Technology Opportunitie Program (BTOP). Under the BTOP program, $4.7 billion of stimulus mor being provided to support the deploy of broadband infrastructure.

**Augmented Reality**

Menza Partners is engaged in augm reality, a technology that blends virtu generated and real-world data togeth Users are able to interact in real time that digitally processed data can be superimposed onto live imagery - thu creating a modified picture of the rea world.

*Yahoo News*

Paul Saleh is set to present the much-anticipated release of Ouidoo at "Above The Cloud" event at Shanghai World Expo, Fri. April 23rd at 6:30 pm (Shanghai time). Mr. Saleh, along with many of the founding fathers of Augmented Reality will be in attendance for this once in a lifetime event. Saleh has been working in concert with QderoPateo, a global leader in the development and delivery of Articulated Naturality and pioneers of the proprietary ambient intelligence technology.

Read the full article **here**



**Disclaimer**

Copyright © 2010 Menza Partners LLC. All righ

Judge Castel, if it pleases the Court I am asking for permission to file my Affidavit via a copy supplied by email to Albert Francesco on November 28, 2011 as I am in California and unable to provide an original signature this day. I will Fed Ex the original signature today and it will be entered with the Court tomorrow, November 29, 2011.

Thank you for your consideration regarding this matter.

_Andrew M. Gaines II_

Andrew M. Gaines II

Sworn to before me this

28th day of _November_ , 2011

Notary Public

SHEHADEH AREF SHEHADEH
COMM. # 1866677
NOTARY PUBLIC - CALIFORNIA
SAN MATEO COUNTY
My Comm. Exp. Oct. 27, 2013

# AFFIDAVIT

## of Andrew M. Gaines II

I, Andrew M. Gaines II, being duly sworn, depose and state as follows:

That I agree to the foregoing said statements contained in the attached Motion by Albert Francesco and that I never signed the personal guarantee to any such alleged loan that is at issue in this matter and that I do not recognize any such alleged signature as my own.

November 28, 2011

_____

Andrew M. Gaines II

Sworn to before me this

28th day of November , 2011

_____

Notary Public

SHEHADEH AREF SHEHADEH
COMM. # 1866677
NOTARY PUBLIC - CALIFORNIA
SAN MATEO COUNTY
My Comm. Exp. Oct. 27, 2013

December 2, 2011

Pro Se Office
SDNY

**RE: <u>Saleh v. Francesco</u>, 11 Civ. 438**

To Whom It May Concern:

Pro se defendants in the above-captioned action submitted the enclosed documents directly to chambers. They appear to be a Motion for Reconsideration and supporting documents. Please handle as appropriate and contact me with any questions.

Thank you!

Hugh Murtagh
Law Clerk to Hon. P. Kevin Catel
212.805.0262

> **Please time stamp below.**

# U.S. COURT OF APPEALS FOR THE SECOND CIRCUIT
## NIGHT DEPOSITORY FORM



> ## 4:30 P.M. - 8:30 A.M. EACH BUSINESS DAY
> ## 24 HOURS ON SATURDAYS, SUNDAYS & HOLIDAYS

## INSTRUCTIONS

1. For all appeals commenced on or after January 1, 2010, a counseled party may submit only briefs and appendices in the night depository. This submission does not substitute for CM/ECF filing. Motions may be filed in the night depository only in pre-2010 appeals.
2. Complete the case title and identify the submitted documents.
3. Stamp 1 copy of the brief and appendix or the original motion.
4. Stamp this completed form and affix it to the entire package submitted.
5. Documents are deemed filed on the business day they are date/time stamped or on the next business day if date/time stamped on a Saturday, Sunday or Federal Holiday.
6. Documents date/time stamped after the date they are due must be accompanied by a motion for permission to file out of time.
7. The correct number of copies of all documents must be included.

## Please complete the following information

Case Title (short title) Saleh v. Qderopateo et al    Case Number: 12-1939

| Documents Included | Required Copies |
|---|---|
| ✓ **Briefs** | **6 copies** |
| ✓ **Appendices/Transcript Volumes** | **3 copies** |
| ___ Motions (T-1080 form + affidavit) | original + 2 copies |
| ___ Other (Please identify): | |
| _____ | original + 2 copies |
| ✓ **Proof of service** | original only |

> ### FAILURE TO COMPLY WITH THE ABOVE INSTRUCTIONS MAY UNDULY DELAY FILING WITH THE COURT.

The night depository box is located at the Worth Street entrance of the United States District Court, the Daniel Patrick Moynihan U.S. Courthouse, 500 Pearl Street, New York, NY near the Court Security office.